Fred VANNATTA, et al., Plaintiffs,

v.

Phil KEISLING, in his capacity as Secretary of the State of Oregon, et al., Defendants.

Civ. No. 94–1541–JO.

United States District Court, D. Oregon.

July 13, 1995.

**490**

John R. Faust, Jr., Schwabe Williamson & Wyatt, Portland, OR, John A. Di Lorenzo, Jr., Michael E. Farnell, Hagen Dye Hirschy & DiLorenzo, Portland, OR, for Plaintiffs.

Eric James Bloch, Katherine Green Georges, Department of Justice, Salem, OR, Daniel E. O'Leary, Davis Wright Tremaine, Portland, OR, D. Lawrence Wobbrock, Portland, OR, for Defendants and Intervenor–Defendants.

**ROBERT E. JONES, District Judge:**

This lawsuit involves a federal constitutional challenge to Ballot Measures 6 and 9 which amended the Oregon Constitution. This case is before the Court on Plaintiffs' (# 9) and Defendants' (# 25) Cross–Motions for Summary Judgment on the constitutionality of Measure 6,[1] as well as Plaintiffs'

---

**1.** Measure 6 reads:

Be it enacted by the People of Oregon:

SECTION 1. For purposes of campaigning for an elected public office, a candidate may use or direct only contributions which originate from individuals who at the time of their donation were residents of the electoral district of the public office sought by the candidate, unless the contribution consists of volunteer time, information provided to the candidate, or funding provided by the federal, state, or local government for purposes of campaigning for an elected public office.

SECTION 2. Where more than ten percent (10%) of a candidate's total campaign funding is in violation of Section (1), and the candidate is subsequently elected, the elected official shall forfeit the office and shall not hold a subsequent elected public office for a period equal to twice the tenure of the office sought. Where more than ten percent (10%) of a candidate's total campaign funding is in violation of Section (1) and the candidate is not elected, the unelected candidate shall not hold a subsequent elected public office for a period equal to twice the tenure of the office sought.

SECTION 3. A qualified donor (an individual who is a resident within the electoral district of the office sought by the candidate) shall not contribute to a candidate's campaign any restricted contributions of Section (1) received from an unqualified donor for the purpose of contributing to a candidate's campaign for elected public office. An unqualified donor (an entity which is not an individual and who is not a resident of the electoral district of the office sought by the candidate) shall not give any restricted contributions of Section (1) to a qualified donor for the purpose of contributing to a candidate's campaign for elected public office.

SECTION 4. A violation of Section (3) shall be an unclassified felony.

Motion to Strike (# 60), Motion for Leave to File an Additional Affidavit (# 61), and Motion for Leave to File a Second Amended Complaint (# 57).[2]

## FACTUAL BACKGROUND

On November 8, 1994, Oregon voters passed Measure 6 which essentially limits the amount of campaign contributions that candidates may accept from out-of-district donors. The Measure is comprised of four sections:

(1) Section 1 allows candidates to "use or direct only contributions which originate from individuals who at the time of their donation were residents of the electoral district of the public office sought by the candidate * * *;"

(2) where more than ten percent of a candidate's total campaign funding is in violation of Section 1, Section 2 punishes the candidate by either (a) forcing the *elected official* to forfeit the office and to not hold a subsequent elected public office for a period equal to twice the tenure of the office sought, or (b) forbidding the *unelected candidate* from holding an elected public office for a period equal to twice the tenure of the office sought;

(3) Section 3 prohibits "qualified donors" (*i.e.*, in-district residents) from contributing funds to a candidate on behalf of an out-of-district resident;

(4) Section 4 labels a violation of Section 3 as an "unclassified felony."

Defs.' Ex. A at 1. Entitled the "Freedom From Special Interests" initiative, Measure 6 is intended to prevent out-of-district individuals and organizations from buying influence in elections, thus allowing "ordinary people [to] secure their rightful control of their own government." *Id.* at 2.

Several months after Measure 6 amended the Oregon Constitution, Plaintiffs Vannatta, Gill, and CTPFS attest that they attempted to make $100 contributions to an out-of-district candidate but were informed that their contributions could not be accepted as a result of Measure 6. In addition, Plaintiff

Boehnke alleges that he wishes to solicit and spend funds from out-of-district contributors, but is forbidden to do so by Measure 6. Lastly, pursuant to Measure 6, Plaintiff Smith rejected an out-of-district contribution from Mr. Gill who sent $100 to help Mr. Smith recoup his 1994 campaign debt.

Plaintiffs argue that Measure 6 violates their rights under the United States Constitution. Therefore, pursuant to the Civil Rights Act, 42 U.S.C. § 1983, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, Plaintiffs seek to enjoin Defendants from enforcing Measure 6, and request the Court to declare the Measure void as unconstitutional, respectively. All parties moved for summary judgment, and Plaintiffs also assert three additional motions.

## DISCUSSION

### I. Plaintiffs' Preliminary Motions

■ Plaintiffs move to strike newspaper articles included in Defendants' exhibits because they are inadmissible hearsay which may not be considered by a court on a motion for summary judgment. The articles discuss the amounts and effects of special interest contributions, and were offered by Defendants to show that out-of-district donors in fact pose a real threat to the campaign system. Because the articles are out-of-court statements offered to prove the truth of the facts asserted therein, and were neither made under oath nor subject to cross-examination, they are inadmissible hearsay. *See, e.g., Horta v. Sullivan,* 4 F.3d 2, 8 (1st Cir.1993) (court refused to consider hearsay newspaper account in exhibit form and asserted that "inadmissible evidence may not be considered"). Accordingly, Plaintiffs' Motion to Strike (# 60) Defendants' Exhibits A, B, and C (attached to Defendants' Reply) is GRANTED.

Plaintiff also moves to supplement the record with an additional affidavit from Plaintiff Boehnke, and to file a Second Amended

2. "Plaintiffs" include Fred Vannatta, George Boehnke, Charles Gill, Denny Smith, and the Center to Protect Free Speech (CTPFS). "Defendants" include Phil Keisling and Ted Kulongoski.

Lastly, the League of Women Voters of Oregon and the Oregon State Public Interest Research Group intervened as Defendants.

Complaint, both of which include allegations that Plaintiff Boehnke has solicited funds from out-of-district donors for his 1996 campaign. Plaintiffs' Motion for Leave to File an Additional Affidavit (# 61) and Plaintiffs' Motion for Leave to File a Second Amended Complaint (# 57) are GRANTED.

## II. Cross–Motions for Summary Judgment

### A. Standard

█ Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge Corp.,* 865 F.2d 1539, 1542 (9th Cir.1989), *cert. denied,* 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989).

█ The substantive law governing a claim determines whether a fact is material. *Anderson,* 477 U.S. at 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party. *T.W. Elec. Serv.* at 631. Inferences drawn from facts are viewed in the light most favorable to the non-moving party. *Id.* at 630–31.

Plaintiffs challenge Measure 6 under (1) the First Amendment, (2) the Due Process Clause of the Fifth Amendment, (3) the Equal Protection Clause of the Fourteenth Amendment, (4) the Privileges and Immunities Clause of Article IV, and (5) the Commerce Clause of the United States Constitution. Defendants respond by arguing that this Court lacks jurisdiction over Plaintiffs'

lawsuit and that Measure 6 is constitutional. As there are no genuine issues of material fact, Defendants' jurisdictional arguments must be addressed before considering the constitutionality of Measure 6.

### B. Subject Matter Jurisdiction

█ Defendants originally advance three related arguments in support of their assertion that this Court lacks jurisdiction over Plaintiffs' lawsuit. First, they claim that there is no justiciable case or controversy because the mere existence of a law is not enough to warrant pre-enforcement judicial review under the Declaratory Judgment Act. Second, Plaintiffs lack standing because they allege no more than a hypothetical threat of injury which cannot satisfy the concrete injury in fact requirement of Article III of the Constitution. Defendants apparently withdrew the second contention before oral argument on July 13, 1995. Lastly, Defendants argue that Plaintiffs' claims are not ripe because they involve uncertain or contingent future events that may not occur. I will address all issues because the parties cannot invoke the jurisdiction of this court by stipulating to the jurisdictional requirement of standing. *See Whitmore v. Arkansas,* 495 U.S. 149, 155–56, 110 S.Ct. 1717, 1722–24, 109 L.Ed.2d 135 (1990) ("A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing.")

█ Plaintiffs explain that they may receive judicial review without exposing themselves to criminal prosecution where there exists a credible threat of prosecution. Moreover, Plaintiffs attempted to either confer or accept campaign contributions; therefore, they have suffered concrete injuries which permit this Court to address the merits of Plaintiffs' claims.

### 1. Standing

█ Article III of the Constitution limits federal jurisdiction to cases or controversies of which standing is a core component. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). The irreducible constitutional minimum of standing contains three require-

ments: plaintiffs must establish that (1) they have suffered an actual or imminent, concrete injury in fact, (2) there is a causal connection between the alleged injury and the conduct complained of, and (3) it is likely that a favorable decision will redress plaintiffs' injury. *Id.; Am.–Arab Anti–Discrimination Comm. v. Thornburgh,* 970 F.2d 501, 506, 510 (9th Cir.1991).

Defendants acknowledge that if one plaintiff has standing, it does not matter whether the others do. *See Bowsher v. Synar,* 478 U.S. 714, 721, 106 S.Ct. 3181, 3185, 92 L.Ed.2d 583 (1986). In the present action, Plaintiffs have standing to challenge Measure 6 if one of the Plaintiffs can show an actual or imminent injury in fact.

"[T]he nature and extent of facts that must be averred (at the summary judgment stage) or proved (at the trial stage) in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue." *Lujan,* 504 U.S. at 561, 112 S.Ct. at 2137. Applying this principle, Judge Dwyer held that Congressman Foley had standing to challenge a term limit initiative because (1) he was the object of the law, (2) he would be prevented from running for another term if the law is enforced, and (3) he intended to run for an additional term. *Thorsted v. Gregoire,* 841 F.Supp. 1068, 1073 (W.D.Wash. 1994).

Sections 1 and 2 of Measure 6 prohibit candidates from accepting out-of-district contributions, whereas *Sections 3 and 4* criminalize donations made by in-district residents on behalf of out-of-district contributors. Though Plaintiffs challenge all Sections of Measure 6, their affidavits and allegations encompass conduct relating only to Sections 1 and 2.[3] Because none of the Plaintiffs allege a direct injury resulting from Sections 3 and 4 of Measure 6, I find that Plaintiffs do not have standing to challenge those Sections. Consequently, this Court does not have subject matter jurisdiction to consider the constitutionality of Sections 3 and 4 of Measure 6.

With respect to Section 1 and 2, Plaintiff Boehnke provides the following statements in support of his standing to challenge Measure 6:

(1) he was the Republican nominee for State Representative in the last election;

(2) he intends to run again for that office in the May 1996 election;

(3) he has registered his own political committee;

(4) he intends to solicit contributions from his children who live outside of his district;

(5) he wishes to use more than ten percent of the funds that he receives from out-of-district contributors.

As a candidate, Mr. Boehnke is undeniably an "object" of Measure 6, like Congressman Foley in *Thorsted.* Moreover, Mr. Boehnke avers more concrete facts than alleged by Congressman Foley in *Thorsted,* which show that he will be imminently injured by Measure 6 if he cannot "use or direct" more than ten percent of the funds he receives from out-of-district donors. As a candidate in an Oregon election in less than a year, Mr. Boehnke has standing to challenge the contribution limits imposed by Measure 6.

Furthermore, as contributors, Plaintiffs Vannatta, Gill, and CTPFS also have standing to challenge Measure 6. Even assuming that these Plaintiffs are not the "objects" of Measure 6, it is well settled that where candidates are prevented from accepting contributions, contributors are also injured:

the Supreme Court held in *Buckley v. Valeo* that contributing money is an act of political association that is protected by the First Amendment because the act of contributing serves to associate the contributor with a candidate as well as with like-minded contributors. 424 U.S. 1, 22,

**3.** As stated earlier, during the pendency of this lawsuit, Plaintiffs Vannatta, Gill, and CTPFS attest that they attempted to make $100 contributions to an out-of-district candidate but were informed by the candidate that their contributions could not be accepted due to Measure 6. Conversely, Plaintiff Boehnke states that he is soliciting funds for his 1996 campaign and intends to use more than ten percent of his campaign funds from out-of-district contributors.

96 S.Ct. 612, 636, 46 L.Ed.2d 659 (1976) (per curiam).

*Service Emp. Intern v. Fair Political Prac. Com'n,* 955 F.2d 1312, 1316 (9th Cir.1992) (contributors had standing to challenge law which, as applied, limited amount of contributions non-incumbents could accept), *cert. den.,* — U.S. —, 112 S.Ct. 3056, 120 L.Ed.2d 922 (1992); *see also, Renne v. Geary,* 501 U.S. 312, 319, 111 S.Ct. 2331, 2338, 115 L.Ed.2d 288 (1991) ("Respondents of course have standing to claim that [a law] has been applied in an unconstitutional matter to bar their own speech.")

The contributors in the instant case have been and will continue to be prevented from associating with out-of-district candidates due to Measure 6. Therefore, Plaintiffs Gill, Vannatta, and CTPFS also have standing to challenge Measure 6.[4]

■ The Court is mindful that a mere subjective chill on protected expression is not adequate to constitute the actual or imminent injury in fact necessary for standing. *Associated Gen. Contractors of Cal. v. Coalition,* 950 F.2d 1401, 1406–07 (9th Cir.1991) (citing *Laird v. Tatum,* 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972) (alleged chilling effect of Army data-gathering and surveillance of civilian political activity was insufficient to confer standing for a First Amendment challenge), *cert. den.,* 503 U.S. 985, 112 S.Ct. 1670, 118 L.Ed.2d 390 (1992); *United Public Workers v. Mitchell,* 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947) (no standing to challenge Hatch Act's bar on political activity by government employees where plaintiffs had neither violated the act by participating in political activity nor asserted firm plans to do so in the future)). The Court is also aware that to have standing to seek injunctive relief the plaintiff must allege an imminent threat of future harm. *City of Los Angeles v. Lyons,* 461 U.S. 95, 101–05, 103 S.Ct. 1660, 1664–67, 75 L.Ed.2d 675 (1983) (no standing to seek an injunction against police where there was no likelihood that plaintiff would be subject to future police brutality).

Plaintiffs Gill, Vannatta, and CTPFS suffer more than a subjective chill on their political expression. They have, in fact, been prevented from associating with out-of-district candidates who returned Plaintiffs' contributions due to Measure 6. This is not only a past injury but rather extends forward as a future chill on their right to associate with certain candidates. Consequently, Plaintiffs Gill, Vannatta, and CTPFS have standing to seek injunctive relief in their challenge to Measure 6.

## 2. Ripeness

■ "Justiciability concerns not only the standing of litigants to assert particular claims, but also the appropriate timing of judicial intervention." *Renne v. Geary,* 501 U.S. 312, 320, 111 S.Ct. 2331, 2338, 115 L.Ed.2d 288 (1991). "A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat. Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979). "When a plaintiff seeks to engage in conduct proscribed by statute and a credible threat of prosecution exists, he need not 'expose himself to actual arrest and prosecution to be entitled to challenge [the] statute * * *.'" *San Francisco County Democratic Cent. Com. v. Eu,* 826 F.2d 814, 821 (9th Cir.1987) (quoting *Babbitt* at 298, 99 S.Ct. at 2308), *aff'd,* 489 U.S. 214, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989). "This is especially true in a First Amendment case because of the sensitive nature of constitutionally protected expression." *Eu* at 821 (internal quotation omitted). Nonetheless, "when plaintiffs 'do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible,' they do not allege a dispute susceptible to resolution by a federal court." *Babbitt* at 298–99, 99 S.Ct. at 2308–09 (quoting *Younger v. Harris,* 401 U.S. 37, 42, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971)).

---

4. Whether Mr. Smith has standing is uncertain because it is not clear whether Measure 6 applies to campaign debts incurred prior to the enactment of the Measure. Nonetheless, this issue need not be resolved because the other parties have standing.

Plaintiffs' affidavits stating that they were, in fact, either unable to make or receive out-of-district contributions show that Sections 1 and 2 of Measure 6 are currently chilling protected expression which meets the requirement that the " 'contentions of the parties * * * present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.' " *Barker v. State of Wis. Ethics Bd.*, 815 F.Supp. 1216, 1219 (W.D.Wis.1993) (chilling effect of law which prohibited lobbyists from volunteering personal services was sufficient to allow pre-enforcement review of the statute) (quoting *Babbitt*, 442 U.S. at 298, 99 S.Ct. at 2308) (internal quotation omitted); *see also Eu*, 826 F.2d at 822 (challenge to a ban on pre-primary partisan endorsements held justiciable where "plaintiffs' uncontroverted affidavits show that they have consistently, if reluctantly, obeyed the statutes in conducting party affairs.") Accordingly, I find that Plaintiffs have presented a justiciable controversy with regard to the effects of Sections 1 and 2 of Measure 6 on Plaintiffs' First Amendment rights of free expression.

In so holding, I reject Defendants' contention that *Renne v. Geary*, 501 U.S. 312, 320, 111 S.Ct. 2331, 2338, 115 L.Ed.2d 288 (1991), compels a different conclusion on justiciability. In *Renne*, voters and party central committees challenged the constitutionality of an amendment to the California Constitution which prohibited political parties from endorsing or supporting candidates for judicial, school, county, and city offices. *Id.* at 314, 111 S.Ct. at 2335. However, the Supreme Court determined that the case was not justiciable because (1) plaintiffs did not suffer any adverse impacts during the pendency of the lawsuit, (2) plaintiffs did not allege an imminent injury, and (3) the criminal provision of the amendment did not clearly proscribe the conduct in which plaintiffs seek to engage. *Id.* at 320–22, 111 S.Ct. at 2338–39. Accordingly, the Court postponed judicial review "until a more concrete controversy arises, [which] also has the advantage of permitting the state courts further opportunity to con-

strue [the amendment], and perhaps in the process to 'materially alter the question to be decided.' " *Id.* at 323 (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 306, 99 S.Ct. 2301, 2313, 60 L.Ed.2d 895 (1979)).

Unlike the amendment in *Renne*, Measure 6 adversely impacted Plaintiffs during the pendency of the lawsuit and unambiguously proscribes the conduct in which Plaintiffs seek to engage. Moreover, Plaintiffs allege sufficient facts regarding the chilling effect of Measure 6 to show the existence of a present and future injury suffered by Plaintiffs. For these reasons, I find that *Renne* is inapplicable to the present action, and that Plaintiffs have presented a justiciable controversy with regard to their claim which incorporates the First and Fourteenth Amendments.[5]

## C. Abstention

■ The only applicable doctrine of abstention in this case was evinced by *Railroad Commission of Texas v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). "To abstain Under *Pullman*, a federal court must find all three of the following factors: first, the complaint touches a sensitive area of social policy upon which the federal court ought not to enter unless no alternative to its adjudication is open; second, a definitive ruling on the state issue would terminate the controversy; and third, the possibly determinative issue of state law is doubtful." *Ripplinger v. Collins*, 868 F.2d 1043, 1048 (9th Cir.1989). However, "[i]n first amendment cases, the first of these factors will almost never be present because the guarantee of free expression is always an area of particular federal concern." *Id.* Moreover, abstention would force a plaintiff who has commenced a federal action to suffer the delay for a state court determination would aggravate the chilling effect of the law. *Id.*

Abstention is not appropriate in the present action because (1) Measure 6 implicates important concerns regarding First Amendment rights, (2) abstention would merely exacerbate Plaintiffs' injuries, and (3) a state

---

**5.** I express no opinion as to whether Plaintiffs present a justiciable case or controversy under

the other cited constitutional provisions.

court ruling would not likely terminate the controversy. For these reasons, I reach the merits of Plaintiffs' challenge.

### D. First and Fourteenth Amendment

■ Plaintiffs have pled a facial challenge to Measure 6, and both parties agreed at oral argument that the Court should conduct a facial analysis of the constitutionality of the Measure. Measure 6 primarily impacts campaign donations by out-of-district contributors. "Certainly, the use of funds to support a political candidate is 'speech'; independent campaign expenditures constitute 'political expression at the core of our electoral process and of the First Amendment freedoms.'" *Austin v. Michigan Chamber of Commerce*, 494 U.S. 652, 656, 110 S.Ct. 1391, 1395, 108 L.Ed.2d 652 (1990) (quoting *Buckley v. Valeo*, 424 U.S. 1, 39, 96 S.Ct. 612, 644, 46 L.Ed.2d 659 (1976) (internal quotation omitted)). Therefore, campaign contributions are political speech protected by the First Amendment.

■ Measure 6 substantially limits contributors from donating money to out-of-district candidates. Laws which directly burden First Amendment rights are subject to strict scrutiny: the state must show that Measure 6 is "narrowly tailored to serve a compelling state interest." *Austin* at 657, 666, 110 S.Ct. at 1396, 1401.[6]

In *Buckley v. Valeo*, plaintiffs challenged contribution and expenditure limits in the Federal Election Campaign Act (FECA) of 1974.[7] 424 U.S. 1, 8, 96 S.Ct. 612, 629. After applying strict scrutiny to both limitations,[8] the Court sustained the contribution limits because they were supported by a compelling state interest in preventing "improper influence," but the Court invalidated the expenditure restrictions because they failed to serve any substantial governmental interest. 424 U.S. at 54–58, 96 S.Ct. at 651–54. Similarly, in *Austin*, the Supreme Court upheld restrictions on independent expenditures[9] by corporations under the First Amendment because they were narrowly tailored to serve the state's compelling interest in averting corruption and improper influence.[10] 494 U.S. at 658–661, 110 S.Ct. at 1396–98.

■ In the present action; Measure 6 burdens a contributor's political speech and right to associate by limiting the amount of the donated funds that may be used by the candidate. Campaign contributions may, in some cases, be restricted because of the greater potential for political "quid pro quo" corruption. *See Buckley*, 424 U.S. at 26–29, 96 S.Ct. at 638–40. Nonetheless, Defendants must still demonstrate in this case that the contribution limitation is narrowly tailored to serve a compelling state interest. At least both parties agree that the state has a compelling interest in preventing "corruption or the appearance of corruption." *Federal Election Commission v. National Conservative Political Action Committee*, 470 U.S.

---

6. In *Austin*, the Court stated the following with regard to direct burdens on the First Amendment: "we must ascertain whether [the law] burdens the exercise of political speech and, if it does, whether it is narrowly tailored to serve a compelling state interest." *Id.* at 657, 110 S.Ct. at 1396.

7. The contribution limitations included a maximum of $1000 on contributions by individuals and groups to candidates and authorized campaign committees, a $5000 limitation on campaign contributions by political committees, and a $25,000 limitation on total contributions by an individual during a calendar year. Conversely, the expenditure limitations varied considerably.

8. Though Defendants strenuously argue that *Buckley* applied less than strict scrutiny to contribution limitations, subsequent cases and *Buckley* itself disagrees. In examining the constitutionality of contribution limitations, *Buckley* recognized that contributions are a form of political association, thus burdens on that right are "'subject to the closest scrutiny.'" *Buckley* at 25, 96 S.Ct. at 637 (quoting *NAACP v. Alabama*, 357 U.S. 449, 460–61, 78 S.Ct. 1163, 1170–71, 2 L.Ed.2d 1488 (1958)).

9. "Independent expenditures" differ from "campaign contributions" only in that they are not made at the direction or under the control of another person for that person's political campaign.

10. Notably, however, the law did not limit the amount of independent expenditures by the corporations but merely required corporations to make such expenditures from segregated funds used solely for political purposes. This nonetheless burdened the right of free association and was strictly scrutinized.

480, 496–97, 105 S.Ct. 1459, 1468–69, 84 L.Ed.2d 455 (1985) ("preventing corruption or the appearance of corruption are the only legitimate and compelling government interests thus far identified for restricting campaign finances.") The issue then is whether the Measure 6 contribution limitation is narrowly tailored to prevent corruption.

I find that Measure 6 campaign limitations are not narrowly tailored to preventing political corruption for several reasons. First, the Measure prohibits non-corrupt, out-of-district contributors from politically associating with candidates running for state offices. Elected officials in state offices impact all state residents, not just the candidate's constituents within his election district. Therefore, the Measure impairs out-of-district residents from associating with a candidate for state office who, if elected, will have a real and direct impact on those persons.

Secondly, the Measure fails to thwart any in-district corruption. The candidate could be wholly funded by one or more wealthy "in-district" individuals who seek to further their own "special interests" by contributing huge amounts of money.

Lastly, the Measure fails to prevent large out-of-district contributions, so long as they do not exceed 10% of the candidate's total campaign expenditures. Therefore, the more money the candidate receives from in-district contributions, the larger the contributions the candidate may accept from out-of-district donors. If the purpose of the Measure is to discourage outside special interests, then the Measure should not be designed to allow out-of-district contributors to increase their donations based upon in-district funding.

In sum, I find that Measure 6 is not narrowly tailored to serve the state's interest in preventing corruption. Because Measure 6 contravenes the First Amendment, I find it unnecessary to address Plaintiffs' challenges under the Fifth Amendment, the Fourteenth Amendment, the Privileges and Immunities Clause, and the Commerce Clause.

■ Furthermore, I conclude that the unconstitutional portions of Measure are not severable because the Measure's lack of clarity prevents the Court from ascertaining the intentions of the people who enacted it.

My decision not to sever is buttressed by the fact that the state legislature is free to enact legislation which limits campaign contributions by corporations for profit, labor unions, banks, etc. A ban on contributions to federal candidate elections by corporations, labor unions, banks and similar entities has been in existence for almost 90 years and has been found to comport with the First Amendment. *See FEC v. National Right to Work Committee*, 459 U.S. 197, 103 S.Ct. 552, 74 L.Ed.2d 364 (1982); *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 788 n. 26, 98 S.Ct. 1407, 1422 n. 26, 55 L.Ed.2d 707 (1978).

Measure 6 makes no express effort to exempt individuals, non-profit corporations, partnerships and the like. A measure must do so to pass federal constitutional muster.

Lastly, I exercise my discretion under the *Pullman* doctrine to abstain from hearing constitutional challenges to Measure 9 which is an Oregon statute, until after the Oregon state courts have passed upon its constitutional muster. Only if Oregon courts find that Measure 9 is constitutional, will I address the federal constitutionality of Measure 9. Though I am dismissing this case for administrative purposes, if Oregon courts conclude that Measure 9 is constitutional under the Oregon Constitution, Plaintiffs may reopen this case without costs.

### CONCLUSION

IT IS ORDERED that Plaintiffs' Motion for Leave to File an Additional Affidavit (# 61), Plaintiffs' Motion for Leave to File a Second Amended Complaint (# 57), and Plaintiffs' Motion to Strike (# 60) are GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment (# 9) is GRANTED. Accordingly, Defendants' Motion for Summary Judgment (# 25) is DENIED.

IT IS FURTHER ORDERED that this case be DISMISSED.