**DEMOCRATIC NATIONAL COMMITTEE, et al.,**
**Plaintiff,**

v.

**Robert Y. WATADA, et al., Defendant.**

**Civil 02–00085 SOM/KSC.**

United States District Court,
D. Hawai"i.

April 11, 2002.

William C. McCorriston, Christopher Cole, McCorriston Miller Mukai MacKinnon LLP, Honolulu, HI, for Democratic National Committee, Jeremy Harris.

Christopher I.L. Parsons, Im Hanifin Parsons LLLC, Honolulu, HI, for the Harris 2002 Campaign Committee.

Russell A. Suzuki, Gary K.H. Kam, Attorney General's Office, Honolulu, HI, for Robert Y. Watada, The Campaign Spending Commission of the State of Hawaii, A. Duane Black, Della L.W. Au Belatti, Mona K.O. Chock, Clifford S. Muraoka, Richard B.F. Choy.

### ORDER DENYING STAY PENDING APPEAL

MOLLWAY, District Judge.

### I. INTRODUCTION.

This court began its last opinion in this case by noting that the case presented no live controversy. The court dismissed the complaint for lack of jurisdiction, but gave Plaintiffs until April 30, 2002, to file an amended complaint properly alleging federal jurisdiction, if subsequent events so warranted. In the short time since the court issued its original opinion (later amended in nonsubstantive ways), the parties have proven how many twists and turns there can be even without a real controversy. The matter is now before the court on Plaintiffs' Motion to Stay or Enjoin Action on the Subject Administrative Complaint and Other Enforcement Pending Appeal.

The court previously denied Plaintiffs' preliminary injunction motion given the dismissal of the complaint. Plaintiffs appealed that denial[1] and now seek a stay of this court's refusal to enjoin Defendants. In essence, the motion to stay is a retitled motion for preliminary injunction. The court is no more persuaded by the present motion than it was by the initial preliminary injunction motion. The motion to stay is DENIED.

Plaintiff Jeremy Harris ("Harris") is the Mayor of the City and County of Honolulu. Mayor Harris and his campaign committee, Plaintiff The Harris 2002 Campaign Committee ("Harris Campaign Committee"), solicited and raised funds for Plaintiff Democratic National Committee (the "DNC"). Defendant Robert Y. Watada ("Watada"), the Executive Director of Defendant Campaign Spending Commission (the "CSC"), initiated an administrative complaint, alleging that Plaintiffs had violated state campaign spending laws in soliciting and raising funds for the DNC, as well as in spending campaign funds to travel to DNC meetings. No evidence was introduced indicating that any Commissioner of the CSC ever saw, reviewed, or approved the administrative complaint prior to its filing.

Before the CSC's Commissioners took action on Watada's administrative complaint, Plaintiffs ran into court seeking an injunction. The court found that, because Plaintiffs failed to demonstrate a credible threat to their First Amendment rights, the court lacked jurisdiction. While Plaintiffs argued that the CSC might take action adverse to them, the court held that the matter was not ripe. The court noted that the Commissioners were scheduled to

---

1. Under 28 U.S.C. § 1292(a)(1), a denial of a preliminary injunction is immediately appealable. However, the present preliminary injunction order says only that the preliminary injunction motion is denied as moot in light of the dismissal for lack of subject matter jurisdiction. Any appellate review of this order would require an examination of the underly- ing dismissal order, which is not itself appealable at this time given the possibility that an amended complaint will be filed. *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir.1997) (en banc). Plaintiffs appear to be asking the appellate court to review the nonappealable dismissal order.

meet to discuss Watada's complaint on April 17, 2002, and that the Commissioners might dismiss the complaint at that time. Unlike Watada, who had allegedly been investigating the DNC contributions for some time, the Commissioners had yet to address the subject and may not have understood what Watada was alleging, given the lack of clarity in the administrative complaint.

In their motion to stay, Plaintiffs argue that the stay is needed because the Commissioners are "poised to fine Plaintiffs ... on April 17, 2002." Memorandum in Support of Motion at 1. There is no evidence in the record supporting this argument, either in connection with the preliminary injunction motion or in connection with the present motion to stay.

After Plaintiffs appealed the preliminary injunction motion and filed their motion to stay proceedings pending appeal, Watada withdrew his administrative complaint. Plaintiffs express no joy at this turn of events. Instead, Plaintiffs now redouble their efforts to identify a controversy. They say that they need a stay "to maintain the status quo." Memorandum in Support of Motion at 1. Even while seeking a stay by this court, Plaintiffs have demanded that the CSC proceed to address the administrative complaint at its meeting on April 17, 2002. Plaintiffs want a clear statement by the Commissioners as to whether the matters in the administrative complaint are going to resurface. Plaintiffs fear that Watada is engaging in gamesmanship, and that the charges will be refiled in the midst of the gubernatorial campaign. See Letter from William C. McCorriston, counsel for Mayor Harris and the DNC, to A. Duane Black, Chairman of the CSC (April 8, 2002). The CSC is apparently going to grant Plaintiffs' wish for the Commissioners to address the effect of Watada's withdrawal of the administrative complaint. The latest agenda for the meeting scheduled for April 17, 2002, indicates that, at that meeting, the Commissioners will take up the matter of Watada's withdrawal of the administrative complaint.

None of this activity, fast and furious as it is, has made a stay appropriate.

## II. *STANDARD.*

Rule 62(c) states:

When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

Fed.R.Civ.P. 62(c).

This court evaluates a motion for stay pending appeal using tests on a continuum like that used for injunctive relief. At one end of the continuum, the appellant "must show both a probability of success on the merits in his appeal and the possibility of irreparable injury. At the other end of the continuum, [the appellant] must demonstrate that serious legal questions are raised and that the balance of hardships tips sharply in his favor." The public's interest is an additional factor. *Artukovic v. Rison,* 784 F.2d 1354, 1355 (9th Cir.1986). *Accord Lopez v. Heckler,* 713 F.2d 1432, 1435 (9th Cir.1983) ("The standard for evaluating stays pending appeal is similar to that employed by district courts in deciding whether to grant a preliminary injunction"); *Maui Land & Pineapple Co. v. Occidental Chem. Corp.,* 24 F.Supp.2d 1083, 1084 (D.Haw.1998) ("The standard for evaluating a request for a stay pending appeal is similar to that for evaluating a request for preliminary injunction"); *see also* Dorothy W. Nelson et al., *Federal Ninth Circuit Civil Appellate Practice* §§ 6.267 to 6.268 (2001) (the standard on a

motion for stay pending appeal is comparable to that used in evaluating a motion for preliminary injunction; the court balances the moving party's probability of success on appeal, the relative hardships to the parties, and the public's interest).

### III. ANALYSIS.

Plaintiffs' motion for a stay seeks the very injunctive relief that this court denied. Just as they were not entitled to injunctive relief, they are not entitled to a stay.

### A. As This Case Continues to Lack Ripeness, the Court Does Not Address the Issue of Mootness.

■ The court's earlier ruling turned on a lack of ripeness. Ripeness is clearly distinguishable from mootness, the doctrine on which Defendants now rely. Defendants argue that, with Watada's withdrawal of the administrative complaint, Plaintiffs' claims have been rendered moot, and that this motion should be denied on that ground. Plaintiffs argue that the matter is not moot as long as the situation is capable of repetition. Even if the record were sufficient to permit the court to determine the effect of the withdrawal, which it is not, the court would not reach the issue. If, in the first instance, a dispute is not ripe, the court need never address an allegation of mootness.[2]

■ In determining whether a dispute is ripe, the court looks to the situation as of the time suit was filed. See Malama Makua v. Rumsfeld, 136 F.Supp.2d 1155, 1161 (D.Haw.2001) ("[r]ipeness is an element of jurisdiction and is measured at the time an action is instituted"); Bradley v. Work, 916 F.Supp. 1446, 1464 (S.D.Ind. 1996) ("ripeness is determined as of the

date of filing the action"), aff'd 154 F.3d 704 (1998); cf. Lockary v. Kayfetz, 917 F.2d 1150, 1153–54 (9th Cir.1990) (ripeness in takings case determined at time suit was filed). "The ripeness doctrine is designed to prevent premature judicial intervention in uncompleted agency proceedings and to insure that challenged agency decisions have a concrete impact on the parties involved." Friedman Bros. Inv. Co. v. Lewis, 676 F.2d 1317, 1319 (9th Cir.1982) (citing Abbott Labs. v. Gardner, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), overruled on other grounds Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)). Ripeness is not affected by events occurring after a suit is filed.

■ By contrast, events occurring after suit is filed may render a dispute moot. See Hill v. Blind Indus. & Servs. of Maryland, 179 F.3d 754, 757 (9th Cir. 1999) ("mootness is grounds to dismiss an action at any time"). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." County of Los Angeles v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) (quoting Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)). A party claiming mootness has the heavy burden of establishing that it is not conveniently stopping the complained-of activity, only to resume once a suit is dismissed. See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (the burden "lies with the party asserting mootness"). Clearly, dismissal in that context could expose a plaintiff to the risk of having to run to court repeatedly, only to be stymied each time as the defendant

---

**2.** If the effect of the "withdrawal" is to remove the issues raised by Watada from consideration before the CSC, and if Plaintiffs would like to determine the CSC's position on

these issues, Plaintiffs may ask the CSC for an advisory opinion. See Haw.Rev.Stat. § 11–193(a)(17) (Supp.2001).

voluntarily, but temporarily, ceases its actions. *See id.* (if a defendant's voluntary cessation of an allegedly unlawful practice deprived a federal court of jurisdiction over a case, "the courts would be compelled to leave the defendant free to return to his old ways"). It is precisely to avoid such a situation that the Supreme Court has held that "a defendant's voluntary cessation of a challenged practice does not deprive a court of its power to determine the legality of that practice." *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982). However, "a case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Exp. Ass'n,* 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968) (quotation omitted).

Because mootness concerns matters occurring after a suit has been filed, any consideration of mootness presupposes that, at the time the suit was filed, the court had jurisdiction. If the court lacked jurisdiction because the matter was not ripe at the time suit was filed, the court can go no further with the matter. Subsequent events that may affect mootness simply never come into play. Given the lack of ripeness here, the court does not consider the effect of the withdrawal of the administrative complaint.

### B. *Plaintiffs Do Not Establish Entitlement to a Stay.*

In seeking a stay pending appeal, Plaintiffs argue that Watada's initiation of an administrative complaint creates a case or controversy. However, by law, only the CSC's Commissioners have the authority to pursue violations of campaign spending laws. Only the Commissioners, not Watada, may, for example, decide to refer a matter for prosecution, and no prosecution is possible in the absence of such a referral. *See* Haw.Rev.Stat. § 11–216 (Supp. 2001). In arguing that the mere filing of an administrative complaint by the CSC's Executive Director creates a case or controversy, Plaintiffs are relying on inapposite authorities.

The heart of Plaintiffs' claims is the allegation that the campaign spending laws are being unconstitutionally applied.[3] The authorities Plaintiffs cite involve allegations that laws were unconstitutional on their face. The distinction is important.

When, as Plaintiffs claim, courts have employed a relaxed standard in evaluating ripeness or standing (which is often intertwined with or indistinguishable from ripeness), the cases in issue have typically involved facial challenges. Even with a facial challenge, the Ninth Circuit has made it clear that something more than the mere existence of a proscriptive statute or a generalized threat of prosecution is required. In declining to find a facial challenge to a statute to be ripe, the Ninth Circuit said:

> We have held that neither the mere existence of a proscriptive statute nor a generalized threat of prosecution satisfies the "case or controversy" requirement. . . . [Plaintiffs'] argument is essentially another way of saying that the

---

**3.** Plaintiffs' complaint alleges that the statutes cited by Watada in the administrative complaint are unconstitutional both "facially" and "as applied." *See* Complaint ¶ 26. However, Plaintiffs presented no argument in connection with the dismissal or injunctive relief motion going to a facial challenge. To the contrary, Plaintiffs argued that the statutes on their face allowed the activity in issue and that Watada was misapplying the statutes. At most, in seeking to avoid dismissal, Plaintiffs cited cases discussing facial challenges to statutes. Those citations were no more apposite in previous proceedings in this case than they are now.

mere existence of a statute can create a constitutionally sufficient direct injury, a position that we have rejected before and decline to adopt now.... Rather, there must be a "genuine threat of imminent prosecution."

*Thomas v. Anchorage Equal Rights Comm'n,* 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc) (citations omitted), *cert. denied,* 531 U.S. 1143, 121 S.Ct. 1078, 148 L.Ed.2d 955 (2001). Unlike the plaintiffs in *Thomas,* Plaintiffs cannot even show the existence of a proscriptive statute.

A proscriptive statute is exactly what was in issue in every one of the cases Plaintiffs cite in urging this court to relax its ripeness or standing standard. Each of Plaintiffs' authorities involved a provision that, on its face, prohibited the activity in issue. Plaintiffs do not establish that, in this "as applied" challenge, they may proceed in federal court given only the initiation of an administrative complaint by Watada, who lacks authority on his own to rule on the complaint or to take other enforcement action. Plaintiffs identify no statute that, on its face, prohibits the activities they claim were lawfully taken. The present case thus stands in contrast to all of the authorities they cite.

For example, *Virginia v. American Booksellers Assoc.,* 484 U.S. 383, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988), on which Plaintiffs rely, involved a facial challenge to a Virginia statute that made it unlawful to knowingly display sexually explicit material. The Supreme Court recognized that a plaintiff could have an actual and well-founded fear of prosecution even in the absence of actual criminal charges. The Court applied a relaxed standard in this First Amendment context, noting that this well-founded fear constituted an injury-in-fact for standing purposes. The danger the Court was guarding against was that of "self-censorship" by those subject to a statute that, on its face, prohibited activity that was constitutionally protected. *Id.* at 393, 108 S.Ct. 636. A person would be forced to choose between exercising First Amendment rights and following the law by refraining from exercising First Amendment rights. The court permitted a challenge to such a statute by a party facing such a dilemma, even though that party was not actually facing prosecution. Plaintiffs here, by contrast, face no such dilemma. They point to no law that expressly prohibits their proposed actions. Instead, Plaintiffs argue that the statutes are inapplicable to their proposed actions and are unconstitutional only if applied to prohibit those actions. Plaintiffs are not censoring themselves because of what any statute provides on its face. Instead, Plaintiffs are challenging Watada's application of laws that do not expressly prohibit Plaintiffs' actions. In this circumstance, the court requires some showing that the laws are indeed being applied unconstitutionally, not just that Watada, who lacks either the power to prosecute or to refer for prosecution, is claiming that the laws apply to Plaintiffs' actions. As the record indicates only that Watada is making that claim, not that anyone with enforcement power is applying the laws to Plaintiffs' actions, the court finds no dilemma analogous to that in *Virginia.*

Plaintiffs cite a string of other cases involving facial challenges, all equally inapposite. *See Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976);[4] *Secretary of State of Maryland v. Joseph H.*

---

**4.** *Buckley,* 424 U.S. 1, 96 S.Ct. 612, similarly involved a facial challenge to campaign spending contribution limits. Given the express prohibition contained on the face of the law, no actual threat of enforcement was necessary in *Buckley* to find a case or controversy. *See id.* at 11–12, 96 S.Ct. 612. Plaintiffs in the present case are not in a position analogous to that of the plaintiff in *Buckley.*

*Munson Co.*, 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984);[5] *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495 (10th Cir.1995);[6] *Bland v. Fessler*, 88 F.3d 729 (9th Cir.), *cert. denied*, 519 U.S. 1009, 117 S.Ct. 513, 136 L.Ed.2d 403 (1996);[7] *New Hampshire Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8 (1st Cir.1996);[8] *Vannatta v. Keisling*, 899 F.Supp. 488 (D.Or.1995), *aff'd*, 151 F.3d 1215 (9th Cir.1998), *cert. denied*, 525 U.S. 1104, 119 S.Ct. 870, 142 L.Ed.2d 771 (1999).[9] Each of these cases involved statutes that expressly prohibited the exercise of various First Amendment rights.

Two other cases cited by Plaintiffs as supporting ripeness involved not only facial challenges but also actual threats of prosecution.

*Culinary Workers Union, Local 226 v. Del Papa*, 200 F.3d 614 (9th Cir.1999), involved a facial challenge to a statute that

---

**5.** *Munson*, 467 U.S. 947, 104 S.Ct. 2839, found that a professional fundraising company had suffered both threatened and actual injury and therefore had standing to challenge a statute that prohibited it from charging a fee of more than 25% of the funds it raised for charities. The fundraising company was threatened with prosecution if the company continued to charge more than 25%. The parties stipulated that a customer was reluctant to enter into a contract with the fundraising company because of that limitation. Accordingly, the court allowed a facial challenge to the limitation. *Id.* at 954–56, 104 S.Ct. 2839. Again, Plaintiffs' position here is not analogous to that of the fundraising company in *Munson*.

**6.** *Richardson*, 64 F.3d 1495, also involved a facial challenge. *Richardson* concerned a statute that expressly prohibited the use in state election campaigns of contributions solicited for or received in a federal election campaign. *Id.* at 1497. Although there was no evidence firmly establishing that the plaintiff intended to run for state office, the Tenth Circuit found that the case was ripe for review because the politician was faced with the "dilemma" of following the statute or of soliciting money without restricting its use to federal elections and thereby violating the statute. *Id.* at 1500. The Tenth Circuit concluded that, because New Mexico had not disavowed any intent to prosecute if the plaintiff violated the statute prohibiting protected activity, the plaintiff faced a credible risk of prosecution. *Id.* at 1502. While this Tenth Circuit case is not controlling here, the court notes that, even if it were, it would clearly be distinguishable. Plaintiffs here do not face the dilemma present in *Richardson*.

**7.** In *Bland*, 88 F.3d 729, the plaintiff challenged the constitutionality of a statute that regulated automatic dialing and announcing devices (machines that dial telephone numbers and deliver prerecorded messages). Although the plaintiff had not received any actual threat of prosecution, the Ninth Circuit concluded that he had standing to raise a facial challenge to the statute. He faced the dilemma of obeying the express dictates of the statute or of risking substantial civil fines and private enforcement actions. *Id.* at 736–37. By contrast, Plaintiffs here argue that the express dictates of Hawaii's campaign spending laws permit the actions Plaintiffs propose.

**8.** *Gardner*, 99 F.3d 8, also involved a facial challenge. The New Hampshire statute in issue in *Gardner* limited contributions by a political action committee. The First Circuit held that a political action committee had standing to challenge the statute because,

> when dealing with pre-enforcement challenges to recently enacted (or, at least, non-moribund) statutes that facially restrict expressive activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence.

*Id.* at 15. The Ninth Circuit appears not to have adopted this approach, *see Thomas*, 220 F.3d at 1139. Even if *Gardner* were controlling law here, it would not apply, as it concerns facial challenges.

**9.** *Vannatta*, 899 F.Supp. 488, involved a facial challenge to an Oregon measure that limited the amount of campaign contributions candidates could accept from out-of-district donors. Finding that donors were being "chilled" in making contributions, the court held that the controversy was ripe. *Id.* at 494–95.

prohibited any statement derogatory to or affecting the financial status of any bank. A union distributed a handbill that criticized the management and financial condition of a bank. The state attorney general threatened enforcement of the proscriptive statute. *Id.* at 616. The parties disputed whether the attorney general had the power to prosecute the union herself, and the attorney general eventually asserted that she could not herself prosecute the union. However, this dispute proved immaterial, as the attorney general had also threatened to refer prosecution to "local criminal authorities" who clearly did have the necessary authority. *Id.* at 617–18. Under these circumstances, the Ninth Circuit found a sufficient case or controversy. *Del Papa* is distinguishable from this case on two grounds. First, it involved a facial challenge. Second, it involved the threat of a referral to prosecution. Here, by contrast, there is an "as applied" challenge, and Watada clearly lacks the power either to prosecute or to refer to prosecution. Only the CSC, acting through its Commissioners, may make a referral to prosecution. *See* Haw.Rev.Stat. § 11–216 (Supp.2001).

*California Democratic Party v. Lungren,* 860 F.Supp. 718 (N.D.Cal.1994), also cited by Plaintiffs, is similarly distinguishable. *Lungren* involved a facial challenge to a California constitutional provision that stated, "No political party or party central committee may endorse, support, or oppose a candidate for nonpartisan office." The attorney general, who had previously supported lawsuits by private citizens to enforce the provision, wanted to bring his own enforcement action in state court against the California Democratic Party. *Id.* at 721. The court concluded that these circumstances demonstrated a sufficient threat of injury to support jurisdiction. *Id.* Plaintiffs here have neither a facial challenge nor the kind of credible threat of prosecution present in *Lungren.* The at-

torney general in that case, unlike Watada, clearly had the power to prosecute.

In the end, Plaintiffs are left with no authorities clearly on point. It is only to prevent expressly proscriptive laws from "chilling" First Amendment rights that courts have adopted relaxed standards for standing and ripeness. *See, e.g., San Diego County Gun Rights Comm. v. Reno,* 98 F.3d 1121, 1129 (9th Cir.1996) (noting that the "chilling effect" on First Amendment speech is an adequate injury for standing purposes when the plaintiff presents an overbreadth facial challenge to a statute); *Richardson,* 64 F.3d at 1499–1500 (10th Cir.1995) ("in the context of a First Amendment facial challenge, reasonable predictability of enforcement or threats of enforcement, without more, have sometimes been enough to ripen a claim") (quotation omitted). These cases do not relax any requirement in the context of an "as applied" challenge such as Plaintiffs bring here.

Given the absence of a case or controversy, Plaintiffs cannot satisfy either the test requiring them to show a likelihood of success on the merits and irreparable injury, or the test requiring them to show serious questions as to the merits and a balance of hardships that tips sharply in their favor. Accordingly, the stay is denied.

## IV. CONCLUSION.

As Plaintiffs have not demonstrated that they are entitled to a stay pending appeal, their motion to stay is denied.

IT IS SO ORDERED.