153 F.3d 984
 98 Cal. Daily Op. Serv. 6659, 98 Daily Journal
D.A.R. 9265
Arthur SNOECK and John Wheeler, Plaintiffs-Appellants-Cross-Appellees,
v.
Frank BRUSSA, General Drennan "Tony" Clark, B.J. Fuller,
Michael R. Griffin, Alan J. Lefebvre, Honorable Sally L.
Loehrer, Harlan Elges, and Leonard I. Gang, Nevada
Commission on Judicial Discipline,
Defendants-Appellees-Cross-Appellants.
 Nos. 96-16804, 96-16947.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 4, 1997.
Decided Aug. 27, 1998.
 
 Donald J. Campbell, Donald J. Campbell & Associates, Las Vegas, Nevada, for plaintiffs-appellants-cross-appellees.
 Dennis L. Kennedy, Lionel, Sawyer & Collins, Las Vegas, Nevada, for defendants-appellees-cross-appellants.
 Appeals from the United States District Court for the District of Nevada; Philip M. Pro, District Judge, Presiding. D.C. No. CV-S-96-587-PMP(LRL).
 Before: HARLINGTON WOOD, JR.,* RYMER, and TASHIMA, Circuit Judges.
 Opinion by Judge HARLINGTON WOOD, JR.; Dissent by Judge TASHIMA.
 HARLINGTON WOOD, JR., Circuit Judge:
 
 
 1
 Plaintiffs, Arthur Snoeck and John Wheeler, in 1996 filed individual complaints with the Nevada Commission on Judicial Discipline alleging certain improper acts had been committed by two sitting Nevada judges. Dissatisfied with the Commission's procedures and restrictions they filed this suit against the Commission members in their official capacities as well as the Executive Director of the Commission. The Commission itself was not named a party, although for convenience we refer to the defendants collectively as the Commission. The Commission is comprised of two judges, two attorneys, and three laypersons, and it employs an executive director, all defendants in this case.
 
 
 2
 Plaintiffs allege that their common problem arose because of the confidentiality restrictions imposed on them by the Commission. Their judicial complaints were filed on a Commission form. In requesting a judicial investigation each plaintiff was required to subscribe to the following statements which appeared on the complaint form:
 
 
 3
 I request that this alleged conduct be investigated and appropriate action be taken by the Nevada Commission on Judicial Discipline. I have read and understand the Constitutional requirement of confidentiality described on the reverse side of this form.
 
 
 4
 The reverse side of the form described that confidentiality requirement:
 
 Important Notice
 
 5
 Constitutional Requirement of Confidentiality
 
 
 6
 In accordance with the Administrative and Procedural Rules for the Nevada Commission on Judicial Discipline, which are embodied in the Rules of the Nevada Supreme Court, as imposed by Article 6, Section 21(5)(a) of the Nevada Constitution, your complaint, and the facts concerning it must be kept in strict confidence. A breach of confidentiality is a violation of the Nevada Supreme Court Rules and may subject the violator to contempt proceedings before the Supreme Court.
 
 
 7
 Your complaint should not be discussed with anyone other than members of the Commission's staff, its attorneys and investigators.
 
 
 8
 The confidentiality requirement originates in the Nevada Constitution, Article 6, § 21(5)(a) which provides:
 
 
 9
 The supreme court shall make appropriate rules for:
 
 
 10
 (a) The confidentiality of all proceedings before the commission, except a decision to censure, retire or remove a justice or judge....
 
 
 11
 The result of that state constitutional provision was the adoption of Rules 5 and 6 of the Administrative and Procedural Rules of the Nevada Commission on Judicial Discipline, Supreme Court Rules, Part VII, which provide:
 
 
 12
 Rule 5.
 
 
 13
 Confidentiality.
 
 
 14
 1. All proceedings must be confidential until there has been a determination of probable cause and filing of formal statement of charges.
 
 
 15
 2."Confidentiality" encompasses all proceedings of the commission and all information and materials, written, recorded or oral, received or developed by the commission in the course of its work and relating to alleged misconduct or disability of a judge....
 
 
 16
 Rule 6.
 
 
 17
 Sanctions for violations of confidentiality.
 
 
 18
 Any person who breaches the confidentiality of judicial disciplinary proceedings is subject to being found guilty of contempt of the supreme court. In addition, members of the commission who are judges are subject to disciplinary proceedings before the commission for violation of this rule, and are also subject to removal as members of the commission upon order of the supreme court. Lawyers are subject to appropriate professional discipline for violation of this rule.
 
 
 19
 Under Nevada Revised Statute 22.100, contempt of court, about which Rule 6 warns, is a criminal offense punishable by a fine of not more than $500 and/or imprisonment for not more than twenty-five days.
 
 
 20
 These rules led to plaintiffs' allegations that the Commission violated plaintiffs' First Amendment rights by prohibiting plaintiffs "from disclosing the fact that they have filed a complaint with the Commission, and are similarly prohibited from disclosing the circumstances and events which led to the filing of those complaints." Plaintiffs sought declaratory relief alleging that the contempt threat "chilled" their rights guaranteed under the First and Fourteenth Amendments and Title 42 U.S.C. § 1983; and further that the rules are not only unconstitutionally over broad on their face, but also as applied.
 
 
 21
 The defendants opposed the plaintiffs' motion for a temporary restraining order and moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(6) for failing to state a claim upon which relief could be granted. The Commission contended that it lacked any authority to actually enforce the Nevada Supreme Court rules objected to by plaintiffs.
 
 
 22
 An affidavit by plaintiff Wheeler was filed which the defendants moved to strike. The district court conducted a hearing and thereafter issued its order.
 
 
 23
 In ruling on defendants' motion to dismiss the district court presumed plaintiffs' factual allegations to be true and drew all reasonable inferences in favor of plaintiffs. It considered in detail the two defenses raised by the Commission, the Eleventh Amendment and plaintiffs' alleged lack of standing to bring this action. The district court held that Eleventh Amendment immunity did not extend to the Commission if the rules in question were unconstitutional and if plaintiffs' suit was not barred under Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The district court, relying on Ex Parte Young, explained that the Eleventh Amendment generally bars a federal court from acting on suits by a private party against a state or its instrumentality in the absence of state consent, but that:
 
 
 24
 [I]ndividuals who, as officers of the State, are clothed with some duty in regard to the enforcement of the laws of the State, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action.
 
 
 25
 Ex Parte Young, 209 U.S. at 155-56, 28 S.Ct. 441.
 
 
 26
 And as the district court further pointed out, Ex Parte Young imposed another condition on plaintiffs seeking to avoid the Eleventh Amendment bar:
 
 
 27
 In making an officer of the State a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the State, and thereby attempting to make the State a party.
 
 
 28
 Ex Parte Young, 209 U.S. at 157, 28 S.Ct. 441.
 
 
 29
 That necessary "connection" was further explained in Los Angeles County Bar Ass'n v. Eu, 979 F.2d 697 (9th Cir.1992), as being a connection that "must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." Id. at 704 (citing Long v. Van de Kamp, 961 F.2d 151, 152 (9th Cir.1992); Los Angeles Branch NAACP v. Los Angeles Unified School Dist., 714 F.2d 946, 953 (9th Cir.1983)). That connection must be determined under state law depending on whether and under what circumstances a particular defendant has a connection with the challenged state law. The district court viewed the Commission's admitted lack of contempt or disciplinary authority over plaintiffs, however, as not dispositive of the connection requirement. The court relied on the Nevada Supreme Court's holding in Whitehead v. Nevada Comm'n on Judicial Discipline, 110 Nev. 128, 906 P.2d 230 (1994), noting that, in Whitehead, the Nevada Supreme Court placed the duty on the Commission "to accept and apply both the substantive rules of conduct and the rules of procedure as stated" by that court. Id. 906 P.2d at 250 n. 24.
 
 
 30
 The district court also gave weight to the affidavit of plaintiff John Wheeler which states that it was "his understanding" that no investigative or other action would be taken by the Commission on plaintiffs' judicial complaints absent plaintiffs' agreement to abide by the confidentiality requirements. The district court therefore held that the Commission had more than a general duty to enforce state law. Plaintiffs' suit was allegedly based on the execution of the rules by the Commission which the Commission was obligated by the Nevada Supreme Court to enforce. That connection was found sufficient to satisfy the Ex Parte Young "some connection with enforcement" requirement, permitting this suit.
 
 
 31
 Notwithstanding the thoughtful reasoning of the district court, the Eleventh Amendment bars the plaintiffs' action against the Commission. The core of plaintiffs' complaint is the threat of being held in contempt for violation of the rules which chills plaintiffs' exercise of their constitutional rights. However, a careful reading of Whitehead reveals that the Nevada Supreme Court affirmatively confined, rather than expanded, the Commission's powers in this area. "[T]he Commission is not free to define its own procedures" and cannot amend the Rules. Whitehead, 906 P.2d at 250 n. 24. The power to amend the Rules lies with the Nevada Supreme Court, and "[a]bsent such an amendment, the Commission is obligated to accept and apply both the substantive rules of conduct and the rules of procedure as they are stated by [the Supreme Court], however much Commission members ... might disagree with the rules in any given case." Id. Additionally, the Supreme Court expressly stated that "the Commission must faithfully perform its constitutionally assigned-functions [sic] in the judicial disciplinary process." Id.
 
 
 32
 The Commission does not have the power of contempt and does not claim to have that power. Only the Nevada Supreme Court possesses contempt power. Any supposed threat of a contempt action by the Commission, and there has never been one, can therefore be seen to be no more than "imaginary, speculative or chimerical." See Shell Oil Company v. Noel, 608 F.2d 208, 213 (1st Cir.1979). The contempt chill affecting plaintiffs' constitutional rights cannot be alleviated by any pressure which the district court might seek to apply on the Commission. Only the Nevada Supreme Court, which authored the rules but is not a party to this suit, can do anything one way or the other about plaintiffs' contempt chill. It is only collateral, and of no consequence, that the Nevada Supreme Court has stated that the Commission is obligated to accept and apply these rules, or that the Commission might advise the Supreme Court whenever contempt appears to be in order, or that the Commission might allegedly refuse to proceed with plaintiffs' requested judicial investigations. The reminder notices and solicitation of signed promises to abide by the confidentiality rules are ministerial, administrative practices designed to remind citizens of their duties under the rules, not attempts at enforcement. Despite the Commission's general administrative responsibilities, the power of contempt lies only with the Nevada Supreme Court. As Ex Parte Young explains, the officers of the state must be cloaked with a duty to enforce the laws of the state and must threaten or be about to commence civil or criminal proceedings to enforce an unconstitutional act. Ex Parte Young, 209 U.S. at 157, 28 S.Ct. 441. The duty of the Commission to apply the rules is lacking in substance. The duty is no more than the possible use of persuasion. No proceedings to enforce the rules in any manner have been instituted or threatened by the Commission.
 
 
 33
 Furthermore, the present case is distinguishable from Eu. The statute at issue in Eu gave rise to no enforcement proceedings whatsoever, Eu, 979 F.2d at 704 ("It is simply not the type of statute that gives rise to enforcement proceedings."), while the confidentiality rules in the present case include express enforcement provisions in the form of contempt proceedings to be executed by the Nevada Supreme Court, a separate entity from the Commission. Under Nevada law, the Commission has no enforcement power, and therefore, it has no connection to the enforcement of the challenged law as required under Ex Parte Young.
 
 
 34
 We believe the district court's reliance on the Wheeler affidavit in reaching its Eleventh Amendment decision is misplaced. The affidavit only sets forth that it was plaintiff Wheeler's "understanding," gained from some unknown Commission investigator, that no action would be taken by the Commission on plaintiffs' complaints unless plaintiffs would abide by the confidentiality requirements. We simply view the plaintiffs' "understanding" as irrelevant. The affidavit does not provide substantial evidence that the Commission informed Wheeler that he must sign the confidentiality pledge before action would be taken on his complaint. The affidavit deserves to be disregarded notwithstanding the discretion of the district court in some instances to admit hearsay.
 
 
 35
 The dissent asserts that the Commission has imposed a confidentiality requirement on plaintiffs which is independent of, and broader than, the one imposed by the Nevada Supreme Court. Under the Nevada Supreme Court Rules, the confidentiality requirement extends to "all information and materials, written, recorded or oral, received or developed by the commission." The Commission's confidentiality notice states that under the Nevada Supreme Court Rules, the "complaint, and the facts concerning it must be kept in strict confidence" and cautions that the "complaint should not be discussed with anyone other than members of the Commission's staff, its attorneys and investigators." This notice alerts the complainant that the actual complaint and the facts "concerning it" should be kept confidential. While the dissent equates the facts concerning the complaint with the facts underlying the claim, the rules do not. The notice falls completely within the scope of confidentiality required by the Supreme Court Rules. Therefore, we must reverse on the Eleventh Amendment issue. Because the Eleventh Amendment bar conclusively ends this dispute we need not address the related issue of standing which the district court found plaintiffs lacked.
 
 
 36
 We can understand the reluctance of the plaintiffs to sue their state supreme court. If the federal courts were to take this case, however, and rule on the merits of the controversy it would be no more than an advisory opinion. The Nevada Supreme Court does not need our advice whatever it might be.[1] The remedy plaintiffs seek, as phrased in their complaint, lies not with the federal courts, but with the State of Nevada.
 
 
 37
 The judgment of the district court is therefore affirmed, albeit on different grounds. The parties shall bear their own costs.
 
 TASHIMA, Circuit Judge, dissenting:
 
 38
 Ninety years after Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), it is surprising to learn that plaintiffs in federal court cannot sue the members of an administrative agency with prosecutorial functions, such as the Nevada Commission on Judicial Discipline (Commission), in order to bypass Eleventh Amendment immunity, but must sue the state court (or its judges) that would actually impose the punishment for a violation of the challenged statute or regulation. In every case following Ex Parte Young, it always is true that (as here) the officer named as a defendant "does not have the power [to punish] and does not claim to have that power." Maj. op. at 987.
 
 
 39
 In the typical Ex Parte Young case, the defendant is usually a state or county prosecutor who, in the majority's terms, lacks the ability to enforce the statute under question in the sense of having the power to mete out punishment for its violation. That is the function of the courts. The prosecutor also does not write the statute she or he is enforcing; that is the function of the legislature. Yet, in this case, the majority insists that the members of the Commission are not proper Ex Parte Young defendants although their status and function is exactly like that of a state prosecutor.
 
 
 40
 Thus, the prosecutor's ability to enforce a statute is never anything more "than the possible use of persuasion." Maj. op. at 987. That is the nature of a prosecutor's function in a system which respects the separation of powers. The relevant fact--a fact the majority dismisses as "only collateral, and of no consequence," maj. op. at 987 is the one that has guided our Eleventh Amendment jurisprudence for the last ninety years: The Commission "advise[s] the Supreme Court whenever contempt appears to be in order." Id. The Commission is therefore a classic prosecutorial authority and its members the ideal Ex Parte Young defendants.
 
 I.
 
 41
 The majority's narrow holding is that it is insufficient to name the members of the Commission as defendants in this case, and that suing the Nevada Supreme Court (or perhaps the justices themselves in their official capacities) is the only way to attack the confidentiality restrictions that offend the plaintiffs. The majority observes, correctly, that the Commission possesses general administrative responsibilities in judicial investigations, but that only the Nevada Supreme Court has the power to issue contempt citations. Where the majority errs is in its conclusion that, "It is only collateral, and of no consequence ... that the Commission might advise the Supreme Court whenever contempt appears to be in order...." Id.
 
 
 42
 That cannot be right. No one thinks that in a typical Ex Parte Young suit, the attorney general-defendant has the power to punish wrongdoers for violating statutes--only courts can do that. The attorney general is nonetheless the proper defendant for Eleventh Amendment purposes because his or her job is to initiate legal proceedings to persuade the courts to enforce the statute, even though some other body ultimately decides whether and what punishment is appropriate. See Ex Parte Young, 209 U.S. at 157, 28 S.Ct. 441 (the state official need only "have some connection with the enforcement of the act"). See also Los Angeles County Bar Ass'n v. Eu, 979 F.2d 697, 704 (9th Cir.1992) (same).
 
 
 43
 I suspect the confusion in this case comes from the dual roles that the Commission plays in the Nevada legal system. The Commission is a creation of the Nevada Constitution, and its primary function is to discipline judges for wrongdoing. To that end, article 6 § 21 of the Nevada Constitution gives the Commission: (1) the power to investigate judicial wrongdoing; (2) the discretion to initiate proceedings against a judge; (3) the ability to summon witnesses and compel production of evidence; and (4) the power to "[g]rant immunity from prosecution or punishment." Nev. Const. art. 6 § 21(7), (9). These sound like prosecutorial functions, but the Nevada Supreme Court has clarified that the Commission's function of disciplining judges is an entirely judicial role; and its decisions in that regard are subject to review by the Nevada Supreme Court, just like the decisions of other Nevada courts. Whitehead v. Nevada Comm'n on Judicial Discipline, 110 Nev. 128, 906 P.2d 230, 249-50 & n. 24 (1994).
 
 
 44
 The Commission, however, is also an administrative agency that exercises prosecutorial functions. The Nevada Constitution provides that the Nevada Supreme Court may make rules respecting the confidentiality of all proceedings before the Commission. Nev. Const. art. 6 § 21.5(a). And "the Commission is obligated to accept and apply both the substantive rules of conduct and the rules of procedure as they are stated" by the Nevada Supreme Court. Whitehead, 906 P.2d at 250 n. 24.
 
 
 45
 More to the point, however, is that, although the Nevada Supreme Court retains the power to adjudicate and to punish for contempt for a violation of its confidentiality rules, the court is powerless to initiate an investigation into an alleged breach of confidentiality. Del Papa v. Steffen, 112 Nev. 369, 915 P.2d 245, 249-50 (1996). Rather, the Nevada constitution requires that such an investigation be initiated by an executive entity. Id. 915 P.2d at 251. Under Nevada law, the Commission is one of several executive entities that is capable of investigating an alleged breach of the confidentiality rules and initiating punishment proceedings. Id. These rules, of course, define the classic relationship between a prosecutor and a court.
 
 
 46
 Thus, the Commission is a judicial entity to the extent that it is disciplining state judges, but when it comes to enforcing the confidentiality rules, it is a typical prosecutorial agency. Because this case involves the confidentiality rules, the Commission's members are the proper defendants for the same reason that Attorney General Janet Reno was the proper defendant in a suit challenging the constitutionality of the Communications Decency Act, see Reno v. ACLU, 521 U.S. 844, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997); that Governor Pete Wilson and Attorney General Daniel E. Lungren were the proper defendants in a suit challenging California's Proposition 209, see Coalition for Econ. Equity v. Wilson, 122 F.3d 692 (9th Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 397, 139 L.Ed.2d 310; and that Attorney General Christine O. Gregoire was the proper defendant in a suit challenging Washington's Alternative Provider Statute, see Washington Physicians Serv. Ass'n v. Gregoire, 147 F.3d 1039 (9th Cir.1998).
 
 
 47
 In all of these cases, the named officers could, at most, initiate proceedings to enforce the challenged statute--which is exactly what the Commission does. Those officers had no power to hold wrongdoers in contempt or otherwise to impose any punishment. That, to repeat, is the function of the courts. Thus, it is irrelevant that the Commission, like all prosecutorial authorities, cannot actually impose punishment. To focus on this latter fact and demand that the plaintiffs sue only the defendant capable of issuing a legally binding judgment against them (i.e., the Nevada Supreme Court) is like saying that every suit challenging the constitutionality of a federal statute must name the nine justices of the United States Supreme Court as defendants. I would have thought that Ex Parte Young had forever ended such arguments.
 
 II.
 
 48
 Even if I shared the majority's view of the Eleventh Amendment, however, I would still dissent. In my opinion, the Commission has imposed a confidentiality requirement on the plaintiffs that is independent of, and broader than, the one imposed by the Nevada Supreme Court. This broader confidentiality requirement is wholly a creation of the Commission; therefore, even under the majority's view of Eleventh Amendment immunity, the Commission's members are indubitably the proper defendants in a lawsuit challenging it.
 
 
 49
 A close reading of the record reveals that the Nevada Supreme Court imposes a much lesser burden on the plaintiffs' speech than does the Commission. Under the Nevada Supreme Court Rules, Part VII, Rule 5, the plaintiffs must not disclose any materials "received or developed by the commission...." The Commission, however, has unilaterally expanded that confidentiality requirement--and hence the chill on the plaintiffs' speech--far beyond the scope of Rule 5. The Commission's complaint form, which a complainant is required to sign before an investigation will commence, requires confidentiality, not only of the materials "received or developed by the Commission," but also of "the facts concerning [the complaint]". (Emphasis added.) Indeed, the Commission is so zealous in enforcing the confidentiality requirement, it mandates that "[y]our complaint should not be discussed with anyone other than members of the Commission's staff, its attorneys and investigators." (Emphasis added.) Unless this language means something other than what it says, it appears that the plaintiffs cannot discuss the facts underlying their complaint even with their own attorney, let alone family members, friends, the press, or a Department of Justice official investigating allegations of corruption in the Nevada judiciary. Curiously, none of this discussion is banned by the Nevada Supreme Court's rules. It is only the Commission's extension of the confidentiality rule to cover the facts underlying the complaint that casts this pall over the First Amendment.[1]
 
 
 50
 Clearly, the Commission's rules have a chilling effect entirely independent of the Nevada Supreme Court's rules. It is one thing to require that documents submitted to a government agency be kept secret, but quite another to forbid a complainant from discussing the facts of his case with his attorney or anyone else. See Kamasinski v. Judicial Review Council, 44 F.3d 106, 109 (2d Cir.1994); cf. Butterworth v. Smith, 494 U.S. 624, 636, 110 S.Ct. 1376, 108 L.Ed.2d 572 (1990) (Scalia, J., concurring) ("[T]here is considerable doubt whether a witness can be prohibited, even while the grand jury is sitting, from making public what he knew before he entered the grand jury room. Quite a different question is presented, however, by a witness' disclosure of ... not what he knew, but what it was he told the grand jury he knew.")
 
 
 51
 The majority, therefore, is simply wrong when it argues that "[t]he contempt chill affecting plaintiffs' constitutional rights cannot be alleviated by any pressure which the district court might seek to apply on the Commission. Only the Nevada Supreme Court ... can do anything one way or the other about plaintiffs' contempt chill." Maj. op. at 987. In fact, a declaratory judgment by the district court that the Commission's embellishment on the Nevada Supreme Court's rules is unconstitutionally overbroad would dramatically reduce the chilling effect on the plaintiffs. Hence, the members of the Commission are appropriate defendants under Ex Parte Young, even under the majority's restricted reading of that case.
 
 
 52
 The majority, unfortunately, ignores the Commission's expansion of the Nevada Supreme Court's confidentiality rule. In the process, it brushes aside the Supreme Court's admonition to distinguish between greater and lesser levels of the chilling effect. See ACLU, 117 S.Ct. at 2344-45 (recognizing that a greater chilling effect renders a statute more constitutionally suspect); Wisconsin v. Mitchell, 508 U.S. 476, 488-89, 113 S.Ct. 2194, 124 L.Ed.2d 436 (1993) (holding that a minor or speculative chilling effect does not trigger First Amendment scrutiny).
 
 
 53
 In the end, there is nothing extraordinary about the defendants' Eleventh Amendment status. The plaintiffs are challenging as unconstitutionally overbroad the Nevada Supreme Court's confidentiality rule in judicial misconduct proceedings. They are suing the members of the agency that "enforces" that rule in the same way that a prosecutor "enforces" a criminal statute. That agency, the Commission, has also interpreted the rule to give it a far broader effect than as originally written. Far from being barred by the Eleventh Amendment, this is a classic case for the invocation of Ex Parte Young.
 
 
 54
 I dissent from the majority's contrary holding.[2]
 
 
 
 *
 Honorable Harlington Wood, Jr., Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation
 
 
 [1]
 We note that the Nevada Supreme Court has recently adopted amendments to the rules for the Commission on Judicial Discipline. One amendment allows the Commission to begin an investigation based on "information in any form from any source received by the Commission that alleges or from which a reasonable inference can be drawn that a judge committed misconduct or is incapacitated." Judicial Conduct Reporter, Vol. 19, No. 2-3, Summer-Fall 1997, p. 9
 
 
 [1]
 The majority asserts that the district court's reliance on the Wheeler affidavit was "misplaced." Maj. op. at 988. It further asserts that the Wheeler affidavit "deserves to be disregarded" because it "does not provide substantial evidence that the Commission informed Wheeler that he must sign the confidentiality pledge before action would be taken on his complaint." Id. With all due respect, I disagree with this analysis. The district court's ruling was made on a Rule 12(b)(6) motion to dismiss. See maj. op. at 986. Contrary to the rules that apply to the determination of such motions, see, e.g., Sosa v. Hiraoka, 920 F.2d 1451, 1455 (9th Cir.1990), the majority seems to be saying that all inferences should be drawn against the plaintiffs. For surely, it can be inferred from the Wheeler affidavit and Wheeler's "understanding" that a Commission agent told him "that no action would be taken by the Commission on plaintiffs' complaint unless plaintiffs would abide by the confidentiality requirements." At the very least, plaintiffs should be given leave to amend their complaint, rather than our concluding at this stage that they haven't presented "substantial evidence" on this issue
 
 
 [2]
 The district court concluded that the defendants did not have Eleventh Amendment immunity from suit under Ex Parte Young. It went on to hold, however, that the plaintiffs lacked Article III standing. Because of the majority's disposition of the Eleventh Amendment immunity issue, it does not reach the plaintiffs' contention that the district court erred in dismissing the action on Article III standing grounds. I would affirm the district court's holding that Eleventh Amendment immunity does not apply in this case and reach the Article III standing issue