**WASHINGTON LEGAL
FOUNDATION, et
al.,**

v.

**TEXAS EQUAL ACCESS TO JUSTICE
FOUNDATION, et al.**

**No. A–94–CA–081 JN.**

United States District Court,
W.D. Texas,
Austin Division.

Jan. 4, 2000.

**618**

Steven W. Smith, Law Offices of Steven W. Smith, Austin, TX, Daniel J. Popeo, Richard A. Samp, Washington, DC, for Washington Legal Foundation, William R. Summer, plaintiffs.

Michael J. Mazzone, Dow, Cogburn & Friedman, Houston, TX, for Michael J. Mazzone, plaintiff.

Darrell E. Jordan, Hughes & Luce, L.L.P., Dallas, TX, H. Robert Powell, Hughes & Luce, Austin, TX, Brittan L. Buchanan, Hughes & Luce, L.L.P., Austin, TX, Richard A. Johnston, Hale and Dorr, L.L.P., Washington, DC, Francine Rosenzweig, Hale & Dorr, L.L.P., Boston, MA, Geoffrey S. Stewart, Jones, Day, Reavis & Pogue, Washington, DC, for Texas Equal Access to Justice Foundation, defendant.

H. Robert Powell, Brittan L. Buchanan, Richard A. Johnston, David A. Wilson, Hale and Dorr, L.L.P., Washington, DC, Francine Rosenzweig, Geoffrey S. Stewart, Jones, Day, Reavis & Pogue, Washington, DC, for W. Frank Newton, Chairman, Texas Equal Access to Justice Foundation, defendant.

Darrell E. Jordan, H. Robert Powell, Harry G. Potter, III, Attorney at Law, Austin, TX, Brittan L. Buchanan, Hale and Dorr, L.L.P., Washington, DC, Nancy A. Trease, Assistant Attorney General, Austin, TX, for Thomas R. Phillips, Chief Justice, Raul Gonzales, Justice, Jack Hightower, Justice, Nathan L. Hecht, Justice, Bob Gammage, Justice, Craig T. Enoch, Justice, John Cornyn, Justice, Rose Spector, Justice, defendants.

Rande K. Herrell, Attorney General's Office, Austin, TX, for Supreme Court DFTS, defendant.

Scott J. Atlas, Vinson & Elkins, Houston, TX, J. David Bickham, Jr., Vinson & Elkins, Austin, TX, Robert A. Long, Jr., Caroline M. Brown, Covington & Burling, Washington, DC, Robbi B. Hull, Vinson & Elkins, LLP, Austin, TX, for IOLTA Programs (NAIP), amicus.

## ORDER

NOWLIN, District Judge.

Before the Court are: the Justices of the Texas Supreme Court's Motion for Judgment on the Pleadings (Clerk's Doc. No. 78); Plaintiffs' Response to the Supreme Court Justices' Motion for Judgment on the Pleadings (Clerk's Doc. No. 98); and, Reply of the Justices of the Texas Supreme Court to Plaintiffs' Response to Motion for Judgment on the Pleadings (Clerk's Doc. No. 102).

### I. Background

The Plaintiffs in this cause of action are: the Washington Legal Foundation, a nonprofit public interest law and policy center; Michael Mazzone, a Texas resident and attorney licensed to practice law by the State Bar of Texas; and William Summers, a Texas resident and consumer of legal services. Plaintiffs bring this case pursuant to 42 U.S.C. § 1983 asserting that Defendants' mandatory Interest on

Lawyers' Trust Account ("IOLTA") program violates the First and Fifth Amendments of the United States Constitution. The IOLTA program is implemented and overseen by Defendant the Texas Equal Access to Justice Foundation ("TEAJF"). In 1984, Defendants the Texas Supreme Court Justices adopted Article XI of the Rules of the State Bar of Texas which established the IOLTA program.

By Order dated January 19, 1995, this district court granted summary judgment for the Defendants on the basis that the Plaintiffs could not establish a constitutionally cognizable property interest because, but for the IOLTA program, no interest could be earned on the funds in the IOLTA account. *Washington Legal Foundation v. Texas Equal Access to Justice Foundation*, 873 F.Supp. 1, 7 (W.D.Tex.1995). The Fifth Circuit reversed this court, concluding that the interest earned on client funds held in IOLTA accounts is a property interest within the reach of the Fifth Amendment. *Washington Legal Foundation v. Texas Equal Access to Justice Foundation*, 94 F.3d 996 (5th Cir.1996). The Supreme Court affirmed the Fifth Circuit's decision and determined that clients have a "property interest" in the interest income generated by the Texas IOLTA program. *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 118 S.Ct. 1925, 1934, 141 L.Ed.2d 174 (1998). This holding was limited to its determination of the existence of a property interest in the interest income. *Id.* The Supreme Court remanded the case for consideration of whether or not IOLTA funds have been "taken" by the State, as well as the amount, if any, of just compensation due the Plaintiffs. Thus this Court must once again consider the fate of IOLTA. Before the Court may address that issue, the Court must first consider whether the Texas Supreme Court Justice Defendants are immune from suit as they posit in their Motion for Judgment on the Pleadings. In their Motion for Judgment on the Pleadings, the Justices argue that: (a) they are immune from monetary damages asserted against them in their official capacities; (b) they possess legislative immunity for actions taken in a legislative capacity; and (c) that injunctive relief requested by plaintiffs is not yet ripe, and in any event, is also barred by legislative immunity.

## II. Motion for Judgment on the Pleadings

A motion brought pursuant to FED. R.CIV.P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts. 5A Wright & Miller, Federal Practice & Procedure, § 1367 at 509–10 (1990); *see J.M. Blythe Motor Lines Corp. v. Blalock*, 310 F.2d 77, 78–79 (5th Cir.1962). The facts of the instant case are not in dispute. A motion brought under FED. R.CIV.P. 12(c) is specifically designed to facilitate this inquiry. 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure, § 1367 at 511 ("The motion for a judgment on the pleadings only has utility when all material allegations of fact are admitted in the pleadings and only questions of law remain.").

Rule 12(c) motions may be filed after the pleadings are closed. Such motions will be treated as a motion for judgment on the pleadings based on a failure to state a claim on which relief may be granted. *See National Ass'n of Pharmaceutical Mfrs. v. Ayerst Laboratories*, 850 F.2d 904, 909 n. 4 (2d Cir.1988).

## III. Monetary Damages

The named Defendant Texas Supreme Court Justices assert that they are absolutely immune from suit and should be dismissed from this cause of action. First, they assert that they possess official capacity immunity from monetary damages. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). The Plaintiffs agree and assert that there are no claims for monetary damages extant against the Supreme Court Justices. In light of this, the Court

grants Defendants' Motion for Judgment on the Pleadings with regard to all claims against them for monetary damages.

## IV. The Justices' Claims of Legislative Immunity

Plaintiffs however, continue to claim that they are entitled to injunctive relief against the Supreme Court Justice Defendants. Along with their request for declaratory relief that this Court find the IOLTA program unconstitutional, Plaintiffs request that this Court enjoin the currently sitting Texas Supreme Court Justices from "adopting any rules that purport to require attorneys, as a condition for practicing law in Texas, to handle client trust account funds in a manner designed to ensure that interest on those funds will accrue to anyone not designated by the client." *See* Plaintiffs' Complaint at 15. Plaintiffs further seek to enjoin the Justices from imposing disciplinary sanctions on attorneys who fail to comply with the IOLTA rules. *Id.*

The Texas Supreme Court Defendants claim that they are absolutely immune from suit for injunctive relief because in adopting the IOLTA rules they were acting in a legislative capacity. *Supreme Court of Virginia v. Consumers Union of the United States, Inc.,* 446 U.S. 719, 731–34, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980). Plaintiffs agree that the Justices of the Court enjoy absolute immunity for their legislative acts in adopting IOLTA. Plaintiffs assert that their claims against the Texas Supreme Court Justices are not

brought against them in their legislative capacity, but in capacity of the Texas Supreme Court Justices' ability to enforce the IOLTA rules. *Id.; Snoeck v. Brussa,* 153 F.3d 984 (9th Cir.1998). Plaintiffs assert that the Supreme Court of Texas is a proper defendant in an action to enjoin it from "taking disciplinary action against any attorney for failing to place client trust funds into an IOLTA account." *See* Complaint at 15.

### A. Legislative Immunity

■■■ Legislative immunity is derived from the "speech and debate clause" found in the United States Constitution. U.S. Const. art. I, § 6; *see also Tenney v. Brandhove,* 341 U.S. 367, 372–73, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). The Supreme Court has determined that the Speech or Debate Clause immunizes Congressmen from suits for either prospective relief or damages. *Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 502–503, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975). The purpose of this immunity [1] is to insure that the legislative function may be performed independently without fear of outside interference. *Ibid.* To preserve legislative independence, the Supreme Court determined that "legislators engaged 'in the sphere of legitimate legislative activity,' *Tenney v. Brandhove* [341 U.S. 367, 376, 71 S.Ct. 783, 95 L.Ed. 1019 (1951) ], should be protected not only from the consequences of litigation's results but also from the burden of defending themselves."

---

1. Legislative immunity is a different concept from Eleventh Amendment immunity. The Eleventh Amendment prohibits the federal courts from entertaining "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. The bar imposed by the Eleventh Amendment has been extended, by judicial construction, to suits brought against states by their own citizens. *See Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *see also Edelman v. Jordan,* 415 U.S. 651, 662, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The Eleventh Amendment bars suits brought directly

against a state, absent the state's consent, irrespective of the nature of the relief sought. *See Hutto v. Finney,* 437 U.S. 678, 700, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); *see also Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). The Eleventh Amendment does not, however, bar suits seeking declaratory or injunctive relief against state officers. *See Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The Eleventh Amendment is jurisdictional in the sense that it limits the federal court's power, and therefore can be raised at any stage in the proceedings. *Calderon v. Ashmus,* 523 U.S. 740, 118 S.Ct. 1694, 140 L.Ed.2d 970 (1998).

*Dombrowski v. Eastland,* 387 U.S. 82, 85, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967). Individuals who are not legislators, but who are acting in a capacity comparable to that of a legislator, are also entitled to the immunity. *Hughes v. Lipscher,* 852 F.Supp. 293, 298 (D.N.J.1994). Not all actions taken by officials with legislative duties, however, are protected by legislative immunity. *Hughes v. Tarrant County,* 948 F.2d 918, 920 (5th Cir.1991). Legislative immunity protects only those duties that are functionally legislative. *Id.* Although there is no absolute standard by which to distinguish between legislative and nonlegislative acts, courts have consistently recognized a distinction between the legislative act of establishing a policy, act, or law and the nonlegislative act of enforcing or administering that policy, act, or law. *See Supreme Court of Virginia v. Consumers Union of the United States, Inc.,* 446 U.S. 719, 731–34, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980).

### B. Supreme Court of Virginia

*Supreme Court of Virginia v. Consumers Union of the United States, Inc.,* 446 U.S. 719, 731–34, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980), holds that in the instance of a court promulgating a rule, in that case the Virginia Code of Professional Responsibility, a court acts in its legislative capacity and is therefore immune from suit. However, the Supreme Court goes on to say that, because the Virginia Court possessed independent enforcement power "beyond that of merely adjudicating complaints filed by others and beyond the normal authority of the courts to punish attorneys for contempt," the Virginia Court was not shielded by immunity in its enforcement capacity. *Id.* The Court's decision hinged on the fact that various sections of the Virginia Code of Professional Responsibility empowered the Virginia Court with "independent power of its own to initiate proceedings against attorneys." *Id.* at 736, 100 S.Ct. 1967. Thus this Court's decision regarding the immunity of the Supreme Court Justices depends at least in part on whether the Court finds that the Justices have the independent authority to enforce the IOLTA rules.

### C. Independent Authority to Enforce IOLTA

■ Plaintiffs argue that the Supreme Court of the State of Texas retains the independent power to enforce the IOLTA rules for immunity purposes. First, Plaintiffs cite to the Preamble to the Texas Rules of Disciplinary Procedure:

> The Supreme Court of Texas has the constitutional and statutory responsibility within the State for lawyer discipline and disability system, and has inherent power to maintain appropriate standards of professional conduct and to dispose of individual cases of lawyer discipline.

*See* TEX. GOV'T CODE ANN., tit. 2, subtit. G, App A–1 (Vernon 1998). According to the Plaintiffs, the Supreme Court Justices maintain the independent authority to enforce the IOLTA rules, and that for this reason they are appropriate defendants. Although this argument is not without merit, it is ultimately unpersuasive. In *Supreme Court of Virginia,* the United States Supreme Court's decision that the Virginia Court was not immune was not based only upon its "inherent power to discipline attorneys;" but rather upon the fact that "[the Virginia statute in issue] expressly provides that if the Virginia Court or any other court of record observes any act of unprofessional conduct, it may itself, without any complaint being filed by the State Bar or by any other third party, issue a rule to show cause against the offending attorney." *Supreme Court of Virginia v. Consumers Union of the United States, Inc.,* 446 U.S. 719, 724, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980). In the instant case TEAJF and the State Bar play an integral part in the pursuit of attorney compliance with IOLTA. It is these entities that initiate all noncompliance proceedings. *See* Rules Governing the Operation of the Texas Equal Access

to Justice Foundation, Rule 24 (West's Rules of Court 1999). Moreover, the Preamble cited by Plaintiff goes on to state that "the responsibility for administering and supervising lawyer discipline and disability is delegated to the Board of Directors to the State Bar of Texas." *See* TEX. GOV'T CODE ANN., tit. 2, subtit. G, App A-1 (Vernon 1998). The Court finds that based upon this Plaintiffs' argument is devoid of merit.

### D. Rule 24

Rule 24 [2] of the Rules Governing the Operation of the Texas Equal Access to Justice Foundation delineates the procedure an attorney must follow to be compliant with IOLTA. *See* Rules Governing the Operation of the Texas Equal Access to Justice Foundation, Rule 24 (West's Rules of Court 1999). Plaintiffs argue that the language of Rule 24 makes it clear that the Supreme Court retains the ability to discipline attorneys directly.

Defendants respond that Rule 24 provides no role for the Justices of the Supreme Court in the process of disciplining lawyers for failure to comply with IOLTA. Defendants assert that the Supreme Court cannot independently take action under Rule 24; it can only take action if the Texas Equal Access to Justice Foundation and State Bar take action, which they are capable of doing without any involvement from the Supreme Court of Texas.

Plaintiffs rely on the language in 24(d)(ii) "the attorney shall be immediately suspended as an attorney licensed to practice law in the State of Texas until a compliance statement is filed" as stating that the Supreme Court Justices retain the independent authority to suspend attorneys. Plaintiffs argue that because Rule 24 mandates automatic suspension of any attorney who fails to comply, and does not specifically state that the State Bar or some other entity should suspend the noncompliant attorney, the Court has not delegated this power.

The Court finds it difficult to follow Plaintiffs' reasoning. The Court finds that reading Rule 24, it is apparent that after being notified by the State Bar and at the behest of the State Bar, the Clerk of the Supreme Court of Texas is the individual responsible for suspending noncompliant attorneys. Although the Rule does not directly specify in the clause in issue a subordinate body to perform the ministerial act of suspension, it is clear that the Supreme Court Justices do not themselves perform this act. When read in its entirety, it is evident that after the State Bar notifies the Clerk of the Supreme Court of

---

**2. RULE 24. COMPLIANCE**

(a) On or after June 1 of each year, all attorneys licensed by the Supreme Court of Texas shall report IOLTA compliance in a manner to be prescribed by the Texas Equal Access to Justice Foundation and the State Bar of Texas. Such compliance statements may require such information as is deemed reasonably necessary by the Foundation and the State Bar of Texas and shall be signed by the reporting attorney.

(b) Each attorney must complete an annual compliance statement and return it to the Foundation by the date stated on the compliance statement. If the compliance statement is timely filed, indicating compliance, there will be no acknowledgement. The presumption of compliance after timely filing shall obtain, absent some evidence to the contrary.

(c) Should a compliance statement filed by an attorney fail to evidence compliance, the Foundation shall contact the attorney and attempt to resolve administratively the non-compliance.

(d) The Foundation shall furnish annually to the State Bar of Texas a list of all attorneys licensed by The Supreme Court of Texas (i) who have not timely filed a compliance statement or (ii) as to whom the Foundation has been unable administratively to resolve any impediment to the proper filing of a compliance statement. The State Bar of Texas shall send to each person so reported, by certified mail, return receipt requested, a non-compliance notice. Should the attorney fail or refuse to file the compliance statement within thirty (30) days of such notice, the State Bar of Texas shall so notify the Clerk of The Supreme Court of Texas, and the attorney shall be immediately suspended as an attorney licensed to practice law in the State of Texas until a compliance statement is filed.

a lawyer's failure to provide a compliance statement, the Clerk of the Supreme Court is charged with taking action. The Justices themselves are not referred to in the chain of noncompliance. Therefore, the Justices do not have the independent power to enforce Rule 24.

### E. Rule 24, Read Along With Rule 25

Plaintiffs further argue that when read along with Rule 25 [3], which Plaintiffs allege provides that the Supreme Court is the final arbiter regarding whether an attorney is entitled to an exemption, Rule 24 provides the Justices with independent enforcement power of IOLTA. Defendants assert that this reading is erroneous. Defendants assert that the Texas Supreme Court has no independent enforcement power of this rule. Defendants assert that *Supreme Court of Virginia* holds that the ability to *initiate* disciplinary actions deprives the Justices of immunity. Defendants argue that in this case the Supreme Court Justices do not have that ability. This Court agrees.

Moreover, Defendants argue that Plaintiffs reading of Rules 24 and 25 is incorrect. Defendants assert that Plaintiffs are attempting to apply Rule 25 even though it has no relationship to the facts of this case. Rule 25 provides for judicial review of adverse decisions of the Board of Directors of the State Bar when an attorney requests exemption from the IOLTA program, an extension of time to comply, an extension of time to comply with a deficiency notice or an extension of time to file a compliance statement. This rule has no relation to Rule 24 and its command that attorneys who fail to file a compliance statement should be suspended as an attorney licensed to practice in the State of Texas. Therefore these two rules cannot be read in conjunction in order to create an independent enforcement power on behalf of the Supreme Court Justices.

Plaintiffs further rely on a Ninth Circuit case, *Snoeck v. Brussa,* 153 F.3d 984 (9th Cir.1998), in support of their claims. In that case the Ninth Circuit found that the only proper defendant for a challenge to a rule promulgated by the Nevada Commission on Judicial Discipline was the Nevada Supreme Court. This decision was based upon the fact that the Nevada Supreme Court had the sole authority to enforce the

**3.** RULE 25. REVIEW AND APPEAL

(a) An attorney may file a written request based upon good cause for exemption from compliance with any of the requirements of these Rules, an extension of time for compliance, an extension of time to comply with a deficiency notice, or an extension of time to file an annual compliance statement. Such request shall be reviewed and determined by a Committee established by the State Bar or by such committee as the chairperson may, from time to time, designate. The attorney shall be promptly notified of the decision by the Committee.

(b) "Good cause" shall exist when an attorney is unable to comply with this Article because of extraordinary hardship or extenuating circumstances which were not willful on the part of the attorney and were beyond his or her control.

(c) Should the decision of the Committee be adverse to the attorney, the attorney may request the Board of Directors of the State Bar to review the decision by making such request in writing to the Executive Director of the State Bar within thirty days of notification of the decision of the Committee. The Chairman of the Board may appoint a committee of the Board to review the decision of the Committee and make a recommendation to the Board. The decision shall be made by the Board.

(d) Should the decision of the Board be adverse to the attorney, the attorney may appeal such decision by filing suit within thirty days of notification of the Board's action, failing which the decision of the Board shall be final. Such suit shall be brought against the State Bar, and shall be filed in a district court in Travis County, Texas. Trial shall be de novo, but the burden of proof shall be on the attorney appealing, the burden shall be by a preponderance of the evidence, and the attorney shall prove the existence of "good cause" as defined herein. The trial court shall proceed to hear and determine the issue without a jury. Either party shall have a right to appeal

(e) Any suspension of an attorney shall be vacated during the administrative review process and while any suit filed is pending.

rule by holding violators in contempt of court. Plaintiffs assert that since the Justices adopted Rule 24(d), which provides for the automatic suspension of attorneys who fail to comply with the compliance statement requirements, they have not ceded their independent enforcement power of the IOLTA rules.

First the Court notes that *Snoeck* is a Ninth Circuit case and thus has no precedential value in this Circuit. The Court further finds that *Snoeck* is distinguishable from the instant case and from *Supreme Court of Virginia.* *Snoeck* deals with Eleventh Amendment immunity and not legislative immunity unlike the instant case and *Supreme Court of Virginia.* Also, the Court finds that the dissent in that case is instructive in its argument that the members of the Nevada Commission on Judicial Discipline were in fact the proper defendants and not the Supreme Court of Nevada:

> In all of these cases, the named officers could, at most, initiate proceedings to enforce the challenged statute—which is exactly what the Commission does. Those officers had no power to hold wrongdoers in contempt or other wise to impose any punishment. That, to repeat, is the function of the courts. Thus, it is irrelevant that the Commission, like all prosecutorial authorities, cannot actually impose punishment.

*Snoeck* 153 F.3d at 990.

The Court finds that the independent power to enforce IOLTA does not in fact lie with the Justices of the Supreme Court of Texas and that therefore they are immune pursuant to *Supreme Court of Virginia v. Consumers Union of the United States, Inc.,* 446 U.S. 719, 731–34, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980). The Court finds the Justices of the Supreme Court of Texas are entitled to legislative immunity in the face of Plaintiffs' claims against them. The Texas Supreme Court Justices, unlike those in *Supreme Court of Virginia,* do not possess the independent power to initiate disciplinary actions against attorneys. Since the Texas Supreme Court Justice Defendants do not possess independent enforcement powers the Court finds they are absolutely immune pursuant to *Supreme Court of Virginia.*

### V. Case or Controversy

Since the Court has found that the Justices possess legislative immunity, it is unnecessary to address their assertions regarding whether or not this case presents a justiciable case or controversy pursuant to Article III of the Constitution.

### VI. Order

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Supreme Court Justices' Motion for Judgment on the Pleadings (Clerk's Doc. No. 78) is hereby GRANTED.

IT IS FURTHER ORDERED that all of Plaintiffs' claims against the named Supreme Court Defendants, Defendants Thomas R. Phillips, Raul Gonzales, Jack Hightower, Nathan L. Hecht, Lloyd A. Doggett, Bob Gammage, Craig Enoch, John Cornyn, Rose Spector, and the individuals currently serving on the Texas Supreme Court are hereby DISMISSED.