200 F.3d 614 (9th Cir. 1999)
 CULINARY WORKERS UNION, Local 226, Plaintiff-Appellant,
v.
FRANKIE SUE DEL PAPA, in her official capacity as Attorney General for the State of Nevada, Defendant-Appellee.
NEVADA BANKERS ASSOCIATION, Intervenor.
 No. 96-16407
 U.S. Court of Appeals for the Ninth Circuit
 Argued and Submitted December 12, 1996
Filed December 27, 1999
 
 Richard G. McCracken and Michael T. Anderson, McCraken, Stemerman, Bowen & Holsberry, Las Vegas, Nevada, for the plaintiff-appellant.
 Thomas J. Ray, Solicitor General, Carson City, Nevada, and Susan B. Weingarten, Deputy Attorney General, Las Vegas, Nevada, for the defendant-appellee.
 John P. Sande, III and Debra B. Robinson, Varas & Bartlett, Reno, Nevada, for the intervenor.
 Appeal from the United States District Court for the District of Nevada; Lloyd D. George, District Judge, Presiding. D.C. No. CV-96-002450-LDG
 Before: James R. Browning, Otto R. Skopil, Jr. and Melvin Brunetti, Circuit Judges.
 Per Curiam Opinion; Dissent by Judge BRUNETTI.
 PER CURIAM:
 
 
 1
 This is an action brought under 42 U.S.C. S 1983 seeking declaratory and injunctive relief on the ground that a state attorney general's threat to enforce a statute that criminalizes the willful and malicious making of derogatory statements about banks violates the First Amendment of the United States Constitution. The district court dismissed the action after the attorney general claimed that she did not have authority to enforce the statute. We conclude that the district court erred; there is a case and controversy sufficient to permit the district court to exercise jurisdiction over the constitutional claim. Accordingly, we reverse and remand to the district court for further proceedings.
 
 I.
 
 2
 Members of the Culinary Workers Union Local 226 ("union"), embroiled in a labor dispute, began distributing handbills criticizing the management and financial performance of the Commercial Bank of Nevada. The Office of the Attorney General of Nevada ("attorney general") responded to the union's activity by sending a letter notifying the union that one of its handbills, "Commercial Bank Loses Money Again," violated Nevada Revised Statute ("NRS") S 668.105, in that it was "an attempt to adversely affect the financial condition of Commercial Bank of Nevada." The letter quoted NRS S 668.105 in full:
 
 
 3
 Willful and malicious making of derogatory reports: Penalty.
 
 
 4
 Any person who willfully and maliciously makes, circulates or transmits to another or others any statement, rumor or suggestion, written, printed or by word of mouth, which is directly or by inference derogatory to the financial condition, or affects the solvency or financial standing of any bank, or who counsels, aids, procures or induces another to state, transmit or circulate any such statement or rumor is guilty of a gross misdemeanor, and upon conviction thereof shall be fined or imprisoned, or both, in the discretion of the court.
 
 
 5
 The letter continued, "[i]n addition, any other attempt by the Culinary Union to adversely affect the financial condition of a state chartered bank by use of such derogatory statements will similarly be viewed by this office as a violation of law." Finally, the letter warned that "[i]f this office obtains information indicating the continuation of such activities after the date of your receipt of this letter, we shall refer that information to local criminal authorities for appropriate action as well as take appropriate action on behalf of the Nevada Department of Business and Industry, Financial Institutions Division."
 
 
 6
 Upon receiving the letter, the union stopped distributing the handbill. The union thereafter filed this action, seeking injunctive and declaratory relief to prevent the attorney general from threatening to enforce NRS S 668.105 on the ground that the statute is an unconstitutional restraint on free speech, both on its face and as applied to the union. The attorney general opposed the union's application for a TRO, arguing that "if the Attorney General were restrained from enforcing the law, the bank, its customers and the public at large could be subject to harm" and "[t]here is no other way the State can prevent the harm that may result from such statements except by prohibiting them." The attorney general concluded that "[t]he State in this case has threatened to apply the challenged statute against Plaintiff Union based upon the malicious false statements and implications raised in the flyer . . . ." In fact, as therecord indicates, all of the representations made in the handbill were true at the time of its distribution.
 
 
 7
 The district court granted the TRO "based on the irreparable injury to the first amendment rights of plaintiff if NRS 668.105 is enforced." After the district court granted the TRO, the attorney general filed a motion to dismiss. In the motion, the attorney general argued, for the first time, that the union's lawsuit presented no case or controversy because only local prosecutors have the power to initiate criminal prosecutions of NRS S 668.105 under Nevada law. The district court agreed and granted the motion to dismiss, concluding "that the attorney general lack[s] specific authority to criminally prosecute plaintiff, and therefore, this action does not rise to the level of an Article III case or controversy." Our review is de novo. See Sable Communications of California, Inc. v. FCC, 827 F.2d 640, 642 (9th Cir. 1987).
 
 II.
 
 8
 Article III of the federal Constitution requires that we decide only "cases" or "controversies." This requirement precludes the exercise of jurisdiction by a federal court unless the plaintiff has suffered some actual injury or faces a threatened injury, and the injury is fairly traceable to the action challenged and is likely to be redressed by a favorable decision. See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982). Moreover, whenever a plaintiff seeks declaratory and injunctive relief, we have held that there must be a "substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Ross v. Alaska, 189 F.3d 1107, 1114 (9th Cir. 1999) (internal quotation and emphasis omitted). All of these justiciability limitations are reflected in the doctrines of standing, mootness, and ripeness. See Lee v. State of Oregon, 107 F.3d 1382, 1387 (9th Cir. 1997). We address today, however, only a very limited application of these doctrines, namely whether the attorney general's claim that she lacks authority to carry out her threat renders this pre-enforcement action nonjusticiable.
 
 
 9
 We begin by acknowledging that the parties heatedly dispute whether the attorney general has the power to prosecute alleged violations of NRS S 668.105. The attorney general argues that there is no statutory authority to permit her to initiate a criminal prosecution under NRS S 668.105. The union counters by arguing that the state's banking laws are enforced by the Commissioner of Financial Institutions, NRS S 658.105, who "may sue and prosecute or defend in any action or proceeding in any court of this state, " NRS S 658.195 (emphasis added), and that the attorney general is the exclusive representative of the Commissioner, NRS S 228.110. Thus, the union asserts, if the Commissioner is to fulfill his statutory duty of enforcing the criminal provisions of the state's banking code, he must act through the attorney general. Moreover, the union contends the attorney general also has the power to initiate criminal prosecutions whenever a statute allows her to act in a criminal matter, NRS S 228.120(5), and that she has the authority to "[a]ppear in, take exclusive charge of and conduct any prosecution in any court of this state for a violation of any law of this state, when . . . necessary," NRS S 228.120(3). Taken together, the union argues that these statutory provisions would permit the attorney general to pursue her threat to prosecute union members for allegedly violating NRS S 668.105.
 
 
 10
 Although an interesting issue of state law is presented to us, we conclude that it is unnecessary for us to resolve this local dispute. "When contesting the constitutionality of a criminal statute, `it is not necessary that [the plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute thathe claims deters the exercise of his constitutional rights.' " Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979) (quoting Steffel v. Thompson, 415 U.S. 452, 459 (1974)). Rather, under Babbitt, to establish "a dispute susceptible to resolution by a federal court," plaintiffs must allege that they have been " `threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible.' " Id. at 299 (quoting Younger v. Harris, 401 U.S. 37, 42 (1971)).
 
 
 11
 Here, there has clearly been a specific threat of prosecution; the attorney general's letter to the union is precise and exact -she will cause the statute to be enforced unless the union ceases distribution of the handbill. In our view, such an express threat instills a fear of criminal prosecution that cannot be said to be "imaginary or wholly speculative." See Babbitt, 442 U.S. at 302; see also San Diego County Gun Rights Comm. v. Reno, 98 F.3d 1121, 1127 (9th Cir. 1996) (noting that a "specific warning of an intent to prosecute" rather than a "general threat of prosecution" is required). Moreover, the attorney general threatened alternatively to refer prosecution to "local criminal authorities." We have reasoned that a "case or controversy" may exist when it is demonstrated that the state attorney general intends either to enforce a statute or to "encourage local law enforcement agencies" to do so. See Long v. Van de Kamp, 961 F.2d 151, 152 (9th Cir. 1992).
 
 
 12
 The district court relied on Southern Pac. Transp. Co. v. Brown, 651 F.2d 613 (9th Cir. 1980), to reach its conclusion that no justiciable claim exists. In that case, we reasoned that a state attorney general's power to direct and advise local prosecutors was insufficient to create a justiciable controversy against the attorney general. There was, however, no actual threat of enforcement in that case. The plaintiff received no letter threatening either enforcement of the challenged statute or referral to local authorities. Similarly, in Snoeck v. Brussa, 153 F.3d 984, 986 (9th Cir. 1998), a case decided after the district court's decision in this case, we explained that "a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." But again, there was no specific threat of enforcement. See Snoeck, 153 F.3d at 987 ("Any supposed threat. . . by the Commission, and there has never been one, can therefore be seen to be no more than `imaginary, speculative or chimerical.' ") (emphasis added). Here, of course, the attorney general undisputedly threatened the union with enforcement of NRS S 668.105, and fervently continued to do so until after the district court granted the union's request for a TRO. We do not agree with the state that the attorney general's subsequent disavowal of her authority can be construed to eliminate either the "credibility," the "genuineness," or the "effectiveness" of her threat. See Socialist Workers Party v. Leahy, 145 F.3d 1240, 1246 (11th Cir. 1998) ("despite [defendants'] disavowal of their authority to enforce . . . we find . . . that a credible threat of application remains"); see also Americans for Medical Rights v. Heller, 2 F. Supp. 2d. 1307, 1313 (D. Nev. 1998) (finding adequate threat of prosecution by Secretary of State even though actual enforcement must be initiated by local district attorney).
 
 
 13
 We also reject the contention that the attorney general's letter was not a "genuine threat" because it failed to "chill" the union's exercise of First Amendment rights. There is no dispute that the union stopped distributing the contested handbill as soon as it received the attorney general's letter. This is substantially more than a subjective chilling effect. See San Diego County Gun Rights Comm., 98 F.3d at 1129. Moreover, we do not require, especially in the context of First Amendmentcases, that the plaintiff risk prosecution by failing to comply with state law. See Doe v. Bolton, 410 U.S. 179, 188 (1973); Bland v. Fessler, 88 F.3d 729, 736-37 (9th Cir. 1996). Rather, we seek to encourage a plaintiff's "commendable respect for the rule of law" by affording a pre-enforcement opportunity to test the constitutionality of a challenged statute. See Bland, 88 F.3d at 737.
 
 
 14
 Finally, we examine the contention that the union's lawsuit violates the Eleventh Amendment of the Constitution, construed to prohibit federal courts from entertaining suits brought by a state citizen against the state or its instrumentality in the absence of consent. See Edelman v. Jordan, 415 U.S. 651, 662-63 (1974). It is settled law, however, "that the Eleventh Amendment does not bar an action seeking prospective relief from enforcement of an unconstitutional statute." San Francisco County Democratic Central Comm. v. Eu, 826 F.2d 814, 825 (9th Cir. 1987) (citing Ex parte Young, 209 U.S. 123 (1908)), aff'd, 489 U.S. 214 (1989). Thus, the Eleventh Amendment would generally present no barrier to the union's request for declaratory and injunctive relief. See id. Nevertheless, an exception may apply, namely that the state official sued "must have some connection with the enforcement of the act" to avoid making that official a mere representative of the state. Ex parte Young, 209 U.S. at 157. We have no difficulty, however, concluding that the requisite "connection" exists here for the same reasons that the union has demonstrated that a case and controversy exists. See Okpalobi v. Foster, 190 F.3d 337, 347 (5th Cir. 1999) (explaining that Article III justiciability and Eleventh Amendment analysis present "a closely related -indeed, overlapping -inquiry"). The attorney general's acts of sending the letter to the union, threatening either to enforce the statute on behalf the Banking Commissioner or to refer the matter to a local prosecutor, and defending her authority and power to do so during much of the proceedings before the district court, establishes, in our opinion, an ample "connection with the enforcement" of the challenged statute.
 
 III.
 
 15
 We conclude that the district court erred by dismissing the union's lawsuit based on a perceived lack of case and controversy. We further conclude that the Eleventh Amendment presents no bar to this action. While the state raises the specter of mootness, we believe it provident to permit the district court to first entertain, if necessary, any contention that a controversy between the parties no longer exists. See Steffel v. Thompson, 415 U.S. 452, 460 (1974) (permitting court on remand to determine whether a continuing controversy exists in light of subsequent events). Finally, we decline the union's invitation to reach the merits of its constitutional challenge to NRS S 668.105. We agree with the state that proper resolution of this case may require a fuller development of the record.
 
 
 16
 REVERSED and REMANDED for further proceedings.
 
 BRUNETTI, Circuit Judge, dissenting:
 
 17
 I respectfully dissent and disagree with the analysis of the majority. The trial court correctly dismissed Local 226's case for failure to present a case or controversy under Article III because the attorney general lacks the actual authority to prosecute a criminal violation of NRS 668.105. Given this lack of prosecutorial power, the attorney general's threat to take "appropriate action on behalf of the Nevada Department of Business and Industry, Financial Institutions Divisions" and to "refer" information about Local 226's alleged illegal conduct to local prosecutors for "appropriate action" does not rise to the level of a justiciable controversy. Because the attorney general has no power to initiate prosecutions for violations of NRS 668.105and therefore has no "connection with enforcement" of the challenged statute as required under Ex Parte Young, 209 U.S. 123 (1908), the Eleventh Amendment also bars Local 226's action against the attorney general.
 
 
 18
 In Nevada, the attorney general's prosecutorial powers are limited to cases where a specific statute provides her with authority to initiate criminal prosecutions independent of a local district attorney. Under NRS 173.045(1), "[a]ll informations must be filed in the court having jurisdiction of the offenses specified therein, by the attorney general when acting pursuant to a specific statute or by the district attorney of the proper county as informant . . . ." NRS 173.045(1) (emphasis added); see also NRS 173.075 (1) (information or indictment must be signed by "the attorney general acting pursuant to a specific statute" or the district attorney), 173.145(1) (court shall issue a warrant for defendants named in indictment or information upon request of "the attorney general acting pursuant to a specific statute" or the district attorney).
 
 
 19
 Although NRS 228.120(3) grants the attorney general power to "[a]ppear in, take exclusive charge of and conduct any prosecution in any court of this state for a violation of any law of this state, when in his opinion it is necessary, or when requested to do so by the governor," that section does not provide the attorney general with authority to initiate a prosecution. Ryan v. Eighth Judicial Dist. Court, 88 Nev. 638, 641, 503 P.2d 842, 844 (1972). Therefore, the fundamental prosecutorial authority to enforce statutes, which do not specifically provide the attorney general with the power to initiate criminal prosecutions, lies with local enforcement agencies. See id. at 843. Similarly, although NRS 228.170(1) might appear to grant the attorney general specific prosecutorial authority as well, the use of the term "suit" in that statute has been interpreted to authorize the initiation of civil actions only. Id. at 849. Thus, absent other specific statutory authority, the attorney general has no power to initiate a criminal prosecution of Local 226 for violation of NRS 668.105.
 
 
 20
 NRS 668.105 itself is silent on the issue of the attorney general's prosecutorial powers. Nor has Local 226 identified any other statutes which specifically provide the attorney general with authority to initiate prosecutions for violations of section 668.105 or any other banking laws. Rather, Local 226 relies on NRS 228.110, 658.105 and 658.195(1) as the sources for the attorney general's authority to act on behalf of the Banking Commissioner in prosecuting violations of section 668.105. The Banking Commissioner "[i]s charged with the enforcement of the provisions of [Title 55 which encompasses NRS 657-671]." NRS 658.105. Under section 658.195(1), the Banking Commissioner
 
 
 21
 may sue and prosecute or defend in any action or proceeding in any court of this state or any other state and in any court of the United States for the enforcement or protection of any right or pursuit of any remedy necessary or proper in connection with the subjects committed to him for administration or in connection with any bank or the rights, liabilities, property or assets thereof, under his supervision.
 
 
 22
 NRS 658.195(1) (emphasis added). Local 226 assumes that the term "prosecute" refers to criminal prosecutions rather than civil enforcement actions and argues that because the Banking Commissioner cannot himself initiate a criminal prosecution, the only way he can fulfill his enforcement duty under section 658.105(1) is through the attorney general's prosecutorial power.
 
 
 23
 According to Local 226, the attorney general, rather than the local district attorney, stands in the shoes of the Banking Commissioner to prosecute violations of section 668.105 because NRS 228.110 prohibits the Banking Commissioner from employing anyone other than the attorney general to represent the agency in court. Section 228.110 provides:1. The attorney general and his duly appointed deputies shall be the legal advisers on all state mat ters arising in the executive department of the state government.
 
 
 24
 2. No officer, commissioner or appointee of the executive department of the government for the State of Nevada shall employ any attorney at law or coun selor at law to represent the State of Nevada within the state, or to be compensated by state funds, directly or indirectly, as an attorney acting within the state of the State of Nevada or any agency in the executive department thereof unless the attorney general and his deputies are disqualified to act in such matter or unless an act of the legislature specifically authorizes the employment of other attorneys or counselors at law.
 
 
 25
 3. All claims for legal services rendered in violation of this section shall be void.
 
 
 26
 NRS 228.110. Because the attorney general is the exclusive legal representative of all state executive agencies, Local 226 argues that a ruling that the attorney general lacks authority to prosecute violations of section 668.105 would place the Banking Commissioner in the untenable position of being unable to fulfill his statutory duty under NRS 658.105 and 658.195(1).
 
 
 27
 The district court rejected this argument on the following grounds:
 
 
 28
 [T]he term "prosecute" may generally refer to initiating either civil or criminal proceedings. In this case, while there is no dispute that the commissioner of financial institutions may enforce the banking stat utes through civil action, the parties have presented no authority or history that the commissioner may function in initiating a criminal proceeding. Further more, even if the commissioner did have such authority, it does not necessarily follow that the attorney general is also vested with it.
 
 
 29
 I agree. As an initial matter, there is simply no support in the record for Local 226's assumption that the term "prosecute" in section 658.195(1) imposes a duty on the Banking Commissioner to initiate criminal, rather than civil, enforcement actions for violations of the banking laws. Interpreting the term "prosecute" in this way directly conflicts with the statutory scheme that "invests control of the information process [governing criminal matters] in the district attorney to the exclusion of others", Ryan, 503 P.2d at 843, except the attorney general when she is acting pursuant to a specific statute. NRS 173.045(1).
 
 
 30
 Even assuming the Banking Commissioner has a duty to prosecute criminal violations of the banking laws under section 658.195(1) but lacks the ability to appear in court himself, it does not follow that local district attorneys are barred under section 228.110 from prosecuting violations on the Banking Commissioner's behalf. Viewed in its entirety, section 228.110 clearly concerns civil matters only and functions to prevent the unnecessary expenditure of state funds to pay outside counsel when the attorney general's office is able to adequately provide legal services to state agencies, unless the legislature specifically authorizes otherwise. Accordingly, a local district attorney's prosecution of violations of the banking laws on behalf of the Banking Commissioner does not interfere with the purpose of NRS 228.110. This interpretation of section 228.110 is supported by statutes pursuant to which commissioners of other state agencies responsible for enforcing certain statutory provisions directly refer criminal violations of those statutes to local district attorneys for prosecution. See NRS 584.155 (district attorneys shall initiate criminal proceedings for violation of NRS 584.150 on complaint by the commissioner of food and drugs), 607.220 (district attorneys shall prosecute all criminal violations of law reported to them by the labor commissioner).
 
 
 31
 Moreover, Local 226's argument is flawed because NRS 658.105 and 658.195(1) fail to "specific[ally]" conferprosecutorial authority upon the attorney general. Those Nevada statutes which specifically confer prosecutorial jurisdiction stand in stark contrast to NRS 658.105 and 658.195(1). See NRS 228.170 (civil actions, actions against crimes committed in prisons); 228.175 (criminal offenses committed by state employees); 228.177 (criminal offenses committed by county employees); 228.410 (medicaid fraud); and 228.420 (industrial insurance fraud). In light of NRS 173.045(1)'s directive, I decline to infer such a grant of authority in the manner suggested by Local 226.
 
 
 32
 "[T]o satisfy the `case' or `controversy' requirement of Article III of the United States Constitution, a plaintiff must allege a present or immediate injury in fact which is fairly traceable to the challenged action and is likely to be redressed by a favorable court decision." Board of Natural Resources of State of Wash. v. Brown, 992 F.2d 937, 945 (9th Cir. 1993). To show concrete injury in a declaratory judgment action, a plaintiff challenging a statute must demonstrate "a genuine threat that the allegedly unconstitutional law is about to be enforced against him." Stoianoff v. Montana, 695 F.2d 1214, 1223 (9th Cir. 1983). It is not necessary that the plaintiff first expose himself to actual arrest or prosecution in order to challenge the constitutionality of a criminal statute. Steffel v. Thompson, 415 U.S. 452, 459 (1974). "But`persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs.' " Babbitt v. United Farm Workers National Union, 442 U.S. 289, 298 (1979) (quoting Younger v. Harris, 401 U.S. 37, 42 (1971)).
 
 
 33
 Given the attorney general's lack of prosecutorial authority to enforce section 668.105, the only question is whether the attorney general's threats alone, without authority to implement those threats, creates a justiciable controversy. I disagree with the majority's determination that a case or controversy is created solely by reason of such unenforceable threats. In the March 14 cease and desist letter, the attorney general threatened both to "refer" any information about additional alleged violations of section 668.105 by Local 226 to local prosecutors for "appropriate action" and to "take appropriate action" herself on behalf of the Department of Business and Industry, Financial Institutions Division.
 
 
 34
 Focusing solely on the attorney general's threat to refer the matter to local prosecutors, the district court found that no justiciable claim exists. The majority rejected this finding. In Southern Pac. Transp. Co. v. Brown, 651 F.2d 613 (9th Cir. 1980), the case relied on by the district court, several railroads sued the Oregon Attorney General to enjoin enforcement of a statute that restricted attempts by employers to negotiate settlements with employees injured in work-related accidents, alleging in part that the statute violated First and Fourteenth Amendment rights. Id. at 614. The Oregon Attorney General made no independent comments regarding enforcement of the statute, but stipulated that he would advise the district attorneys to presume the act constitutional and that they would enforce it unless restrained when requested to do so. In affirming the district court's dismissal for lack of a justiciable controversy, this court reasoned that the Oregon Attorney General's power to direct and advise the district attorneys did not make the alleged constitutional injury traceable to his action because such direction and advice was not binding on the district attorneys who were guaranteed autonomy under Oregon law. Id. at 615.
 
 
 35
 As in Southern Pacific, Nevada law provides district attorneys with exclusive control over the decision to initiate criminal prosecutions, except when a specific statute empowers the attorney general to initiate a prosecution independent of the district attorney. See NRS 173.045(1);Ryan, 503 P.2d at 843; see also Cairns v. Sheriff, 89 Nev. 113, 115, 508 P.2d 1015, 1017 (1973) ("The matter of the prosecution of any criminal case is within the entire control of the district attorney."). In light of the autonomy of district attorneys under Nevada law, the attorney general's mere referral of information about Local 226's continued alleged violation of NRS 668.105 to local prosecutors in order for them to take "appropriate action" would not necessary result in a criminal prosecution[1]. Accordingly, contrary to the majority's conclusion, the district court correctly found that the attorney general's threat to refer the matter to local prosecutors did not give rise to a justiciable controversy.
 
 
 36
 The more difficult issue not addressed by the district court but discussed by the majority is whether the attorney general's threat to take "appropriate action" herself satisfies the justiciability requirement because it was a "genuine" threat of prosecution which chilled Local 226's exercise of its First Amendment rights. In Snoeck v. Brussa, 153 F.3d 984 (9th Cir. 1998), the plaintiffs sued members and the executive director of the Nevada Commission on Judicial Discipline for declaratory relief. They alleged that the Commission's complaint form chilled their First Amendment rights because it contained a warning that complainants could be subject to contempt proceedings for violating Nevada Supreme Court Rules on confidentiality in judicial discipline matters. However, the court held that only the Nevada Supreme Court possesses the power of contempt and that "[a]ny supposed threat of a contempt action by the Commission, and there has never been one, can therefore be seen to be no more than `imaginary, speculative or chimerical.' " Id. at 987.
 
 
 37
 Although the generic warning on the Commission's complaint form in Snoeck did not rise to the level of the attorney general's specific threat in this case, the reasoning of Snoeck still applies here. Assuming that the vague language of the March 14 letter to take "appropriate action" on behalf of the Department of Business and Industry constitutes a threat of enforcement of the criminal statute, the attorney general's threat can be characterized as "speculative" rather than "genuine" because, as in Snoeck, only local prosecutors in the appropriate jurisdiction, not the attorney general, possess the power to initiate a criminal prosecution for violation of section 668.105.
 
 
 38
 The case of Steffel v. Thompson, cited by Local 226, does not hold otherwise. In Steffel, the plaintiff alleged that he desired to continue hand billing at a local shopping center but had not done so because he feared arrest and prosecution under an allegedly unconstitutional statute. 415 U.S. at 456. The court found that the threats of prosecution against the plaintiff were not "imaginary or speculative" because he had been twice warned to stop hand billing and was told by police that he would likely be prosecuted under the contested statute if he continued handbilling. The court noted that the threat of imminent arrest was corroborated by the actual arrest and prosecution of his hand billing companion. Id. at 459. Steffel, however, is distinguishable from this case because there was no dispute about the authority of the local prosecutor, who was one of the named defendants, to prosecute violations of the contested statute.
 
 
 39
 With respect to Local 226's claim that it suffered a concrete injury because the attorney general's threat to enforce the statute herself chills its speech, the record indicates that Local 226 did not stop hand billing completely. Rather, it stopped distributing the initial handbill regarding Commercial Bank after receiving the March 14 letter but began distributing another, different handbill on March 29, 1996, five days before the district court issued the TRO. The record does not indicate what information was contained in this new handbill regarding CommercialBank. Yet, on the same day that it began distributing the new handbill, Local 226 stated that it intended to revise the original handbill to reflect the fourth quarter results of Commercial Bank, apparently to prepare it for future distribution. Thus, unlike in Steffel , where "genuine" threats of enforcement and the arrest of a hand billing companion had the chilling effect of discouraging the plaintiff from engaging in any hand billing activity, the record does not demonstrate that the attorney general's March 14 letter actually "chilled" Local 226's exercise of its First Amendment rights with respect to distributing handbills about Commercial Bank's financial condition.[2]
 
 
 40
 Finally, the district court's dismissal can be upheld on the separate ground that the Eleventh Amendment bars Local 226's action against the attorney general. In actions challenging the constitutionality of a state statute and seeking injunctive or declaratory relief, the individual state official sued "must have some connection with the enforcement of the act" in order for the action to fall within Ex Parte Young's exception to Eleventh Amendment immunity. Ex Parte Young, 209 U.S. at 157. In addition, that connection " `must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit.' " Snoeck, 153 F.3d at 986 (quoting Los Angeles Bar Ass'n v. Eu, 979 F.2d 697, 704 (9th Cir. 1992)).
 
 
 41
 Although the majority found otherwise, I conclude that the attorney general lacks the necessary "connection with the enforcement" of the challenged statute. As discussed above, the attorney general has no authority under Nevada law to initiate criminal prosecutions for violations of NRS 668.105 and has only general supervisory power over the local district attorneys who are solely responsible for initiating such prosecutions. See NRS 228.120(2). Because the attorney general lacks such prosecutorial authority, her threat of enforcement alone is not sufficient to establish the connection with enforcement required to overcome Eleventh Amendment immunity. See Snoeck, 153 F.3d at 987 (because the defendant Commission on Judicial Discipline has no enforcement power under Nevada law, "it has no connection to the enforcement of the challenged law as required under Ex Parte Young"); Long v. Van de Kamp, 961 F.2d 151, 152 (9th Cir. 1992) (stating that Ex Parte Young requires both a connection with enforcement and a threat of enforcement).
 
 
 42
 The judgment of the district court should be affirmed.
 
 
 
 Notes:
 
 
 [1]
 It should be noted, however, that in extreme cases, the judge of a proper court may require all available evidence be delivered to the attorney general for prosecution if the district attorney refuses to prosecute. NRS 173.065.
 
 
 [2]
 There is no support in the record for Local 226's representation in its brief that it has not distributed any handbills concerning Commercial Bank since the TRO was dissolved.